(February 26, 2004)

■ DAVID L. THORNTON et al., Respondents-Appellants, v SHLOMO BARON et al., Defendants, and 390 WEST END ASSOCIATES, L.L.C., Appellant-Respondent. [772 NYS2d 326]—

Order, Supreme Court, New York County (Marylin Diamond, J.), entered February 25, 2002, which denied defendant landlord's motion for summary judgment and granted plaintiffs' cross motion for summary judgment to the extent of ruling that the legal regulated rent for the subject apartment be determined by using a certain default formula developed by the New York State Division of Housing and Community Renewal, affirmed, without costs.

Defendant occupied the subject premises as an illusory tenant under a lease for the period from December 1992 until July 2000, when this Court declared it invalid (*390 W. End Assoc. v Baron*, 274 AD2d 330, 332 [2000]). It is agreed that, as a consequence of defendant's illusory tenancy, a new stabilized rent must be determined. What divides us is the methodology to be employed, specifically, whether the rent may be set at the level of the last legal regulated rent in effect before commencement of the unlawful tenancy.

The difficulty in setting the legal regulated rent arises from the four-year statute of limitations applicable to residential rent overcharge complaints (CPLR 213-a). Rent was last paid at a lawful rate some eight years before plaintiff tenants commenced this action against the landlord. The statute of limitations contains no provision for a toll while a dwelling unit is not subject to rent stabilization, either because it is temporarily exempt or because an unlawful rent is being charged. Where, as in the instant matter, such period exceeds four years, there are two available options: (1) ignore the time bar in favor of maintaining the statutory scheme that establishes the initial rent according to what was being charged on July 1, 1984 (Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26-517 [a]) or (2) set a new base rent using the default formula employed by the Division of Housing and Community Renewal where no valid rent registration statement is available (*see Matter of Miller v Division of Hous. & Community Renewal*, 289 AD2d 20, 21 [2001], *lv denied* 98 NY2d 604 [2002]).

The identical dilemma was presented in *Matter of Hatanaka v Lynch* (304 AD2d 325 [2003]), which is entirely dispositive of the issue. In that case, we noted (at 326) that while the Rent Stabilization Law does not expressly provide for setting a new legal regulated rent, it does contain "an express proscription against applying the rental history reflected in any registration statement filed more than four years before the rent overcharge

complaint was brought" (citing Rent Stabilization Law § 26-516 [a] [2]; *see Zafra v Pilkes,* 245 AD2d 218, 219 [1997]). We noted that the proscription applies "even where the prior rental history clearly indicates that an unauthorized rent increase had been imposed (*Matter of Silver v Lynch,* 283 AD2d 213, 214 [2001]; *see also Matter of Payne v New York State Div. of Hous. & Community Renewal,* 287 AD2d 415 [2001]; *Matter of Marmelstein v New York State Div. of Hous. & Community Renewal,* 292 AD2d 207 [2002])" (304 AD2d at 326). As the Court of Appeals recently observed, the four-year limitation is applicable whether the relief sought is the recovery of a rent overcharge, adjustment of the legal regulated rent or, as here, both (*Matter of Gilman v New York State Div. of Hous. & Community Renewal,* 99 NY2d 144, 149 [2002]).

As to *390 W. End Assoc. v Harel* (298 AD2d 11, 13 [2002], citing *390 W. End Assoc. v Baron,* 274 AD2d 330 [2000]), the issue in that case was the validity of a virtually identical illusory tenancy involving the same landlord. In *Harel,* as in *Baron,* we vacated a consent judgment purporting to waive the provisions of the Rent Stabilization Law. In the absence of any indication that the parties even raised the question of rent, much less the method for determining prospective rent, the parting observation (at 17) that it should "be set in the amount of the legal stabilized rent at the time the parties entered the initial deregulated lease" can only be read as dictum. Concur—Rosenberger, Williams and Friedman, JJ.

Buckley, P.J., and Tom, J., dissent in a memorandum by Tom, J., as follows: Inasmuch as I conclude that the Supreme Court below erred by using a certain default formula developed by the New York State Division of Housing and Community Renewal to determine the legal stabilized rent for the new lease to plaintiffs-subtenants as of 1996, and not the legal stabilized rent in effect in 1992 when the landlord and prime tenant entered into the initial deregulated lease that has been declared void, I must dissent.

In 1992, the rent stabilized monthly rent for the subject apartment was $507.85. That year, the landlord illegally leased the apartment to the prime-tenant defendant at a monthly rent of $2,400, almost five times the stabilized rent, pursuant to a lease that provided that the apartment would be exempt from the Rent Stabilization Law as long as the prime tenant did not use it as his primary residence. Landlord agreed that any lease renewal rent increases would not exceed the rental increases set by the New York City Rent Guidelines Board and that renewal leases would be executed on standard rent stabilized renewal forms.

In January 1993, the prime tenant sublet the apartment to plaintiffs-subtenants for an initial term of two years at $3,250 per month, with two one-year renewal options at $3,500 and $3,750, or $850 per month above the $2,400 he was paying to the landlord.

In July 1993, the landlord commenced a declaratory action seeking a declaration that the apartment was exempt from rent regulation. Landlord and the prime tenant consented to the entry of a consent judgment, entered in August 1993, declaring, among other things, that the apartment was exempted from the Rent Stabilization Law.

In 1996, the subtenants commenced this rent overcharge action against the prime tenant and his purported agents, alleging that he had created an illusory tenancy to make a profit in violation of the Rent Stabilization Law. In April 1999, the landlord unsuccessfully moved to vacate the consent judgment in its declaratory action and rescind the prime tenant's lease so that it could offer a rent stabilized lease to the subtenants.

In July 2000, this Court, in *390 W. End Assoc. v Baron* (274 AD2d 330 [2000]), reversed the denial of the landlord's motion, finding that the prime lease was void ab initio because it created an "illusory tenancy" as an unlawful attempt to circumvent the Rent Stabilization Law. In so ruling, we expressed our concern that the landlord "may have benefited unjustly at the [subtenant's] expense" and, accordingly, granted the motion "without prejudice to the assertion of any claims among the parties and/or the [subtenants] with respect to profits obtained in violation of the Rent Stabilization Law" (at 333).

In November 2000, the subtenants, now recognized by the landlord as the true tenants of the apartment, amended the complaint in this action to add the landlord as a defendant and assert a cause of action seeking to compel the landlord to offer them a rent stabilized lease at $507.85 per month, representing the legal stabilized rent at the time the landlord and prime tenant entered into the illegal lease in 1992.

The issue now before us is what is the lawful rent that should be charged in the new rent stabilized lease from the landlord to the subtenant for the apartment.

Once the prime lease to the tenant was declared void ab initio, it was as if it never existed and it totally lacked legal effect (*see Diocese of Buffalo v McCarthy,* 91 AD2d 213 [1983], *lv denied* 59 NY2d 605 [1983]). In asserting that it is entitled to the registered rent paid by the prime tenant under that lease as of 1996, the landlord in essence asks this Court to hold that the void lease survived for the purpose of establishing the subten-

ants' stabilized rent. This we cannot do (*see Rivertower Assoc. v Chalfen,* 167 AD2d 309, 309 [1990] ["There is no merit to the defendant's contention that the lease was declared invalid for the purpose of the plaintiffs' claims, but still remains valid for the purpose of his counterclaims"]).

Supreme Court correctly ruled that the rent registered in accordance with the voided lease for an illusory prime tenant could not be considered the lawful base rent. However, it employed the default formula developed by the New York State Division of Housing and Community Renewal to determine the stabilized rent as of 1996. Although the majority believes this was correct, under the unique circumstances herein the legal regulated rent should have been set in the amount of the legal stabilized rent at the time the parties entered into the initial deregulated lease (*see 390 W. End Assoc. v Harel,* 298 AD2d 11 [2002]).

When the prime lease was declared void ab initio, the annual registrations related thereto were also rendered a nullity and the unit must be restored to the status quo ante, i.e., the legal rent as of the date the void prime lease was entered. Since all the registration statements filed by the landlord subsequent thereto are invalid, the landlord is not entitled to any subsequent increases or adjustments (Rent Stabilization Law of 1969 [RSL] [Administrative Code of City of NY] § 26-517 [e]).

I cannot agree with the majority that the four-year statute of limitations period applicable to residential rent overcharge complaints (CPLR 213-a; RSL § 26-516) mandates that the default formula, applied as of 1996, be used to set the legal rent for the new lease. Although the four-year rule is the result of the intent of the Legislature to relieve the landlord of the burden of maintaining records for more than four years, it obviously was not intended to allow the landlord to profit from a scheme to circumvent the Rent Stabilization Laws by creating an illusory tenancy.

Here, the subtenant is not seeking to establish the first stabilized rent for the unit. Nor is the subtenant seeking to collect overcharges from the landlord. Nor is this a case where a tenant's claim is based on the landlord's failure to register the unit or to serve the requisite notices or where the apartment was lawfully deregulated for a period of time. Unlike *Matter of Hatanaka v Lynch* (304 AD2d 325 [2003]), relied on by the majority, it has already been established that the prime lease was void ab initio due to the fraudulent scheme by the landlord and prime tenant to create an illusory tenancy to circumvent the Rent Stabilization Law for their mutual profit, with the landlord

renting a rent stabilized apartment that should have had a legal rent of $507.85 per month to the illusory tenant for a monthly rent of $2,400, plus lease renewal increases since 1992. The tenant in turn profited by subletting the apartment to the subtenant for $3,250 per month, plus lease renewal increases related thereto. This scheme would have continued in futuro if the subtenant had not commenced this action.

Under these circumstances, where the landlord created the illusory tenancy in the end of 1992, application of the default formula as of November 1996, as urged by the majority, would allow the landlord to reap the benefit of its scheme and permit the landlord to retain the exorbitant rent collected in violation of the Rent Stabilization Law, without any consequences, for a period of approximately four years. Such a result would not suffice to deter landlords from attempting to circumvent the Rent Stabilization Law, but rather, would give them a green light to deregulate a unit by use of an illusory tenancy, knowing full well that even if challenged, the stabilized rent would be based on the application of the default formula as of a date no more than four years prior to the challenge, irrespective of how many years they had reaped the benefits of their fraudulent scheme. The four-year statute of limitations under the Rent Stabilization Law was not enacted to accomplish such a result which would frustrate the purpose and spirit of the Rent Stabilization Law.

Rather, using the last legal stabilized rent furthers the purpose of the Rent Stabilization Law, which in general is to protect tenants in specified and qualified apartments from excessive rent that might be charged due to "temporary" shortages of supply and to forestall profiteering, speculation and other disruptive practices (see e.g. Draper v Georgia Properties, 230 AD2d 455 [1997], affd 94 NY2d 809 [1999]). Its goal is not merely to protect tenants but also "to ensure the viability of the rent regulation system which protects tenancies in general, provides predictability to landlords, and significantly enhances the social, economic and demographic stability of New York City." (390 W. End Assoc. v Harel, 298 AD2d at 16.) By allowing the landlord to benefit in part from his scheme to circumvent the Rent Stabilization Laws, this purpose will be undermined and the registration system would effectively be rendered meaningless.

Lastly, in 390 W. End Ave. Assoc. v Youngstein (221 AD2d 292 [1995]), observing that the parties may have attempted to evade the Rent Stabilization Law and create an illusory tenancy, this Court observed that the landlord's status as a wrongdoer, in

pari delicto, justified the equitable denial of any affirmative relief to it in the action. Here, the landlord must be equitably estopped from using the four-year rule to profit from its scheme to evade the Rent Stabilization Law.

Thus, I would set the legal regulated rent for the apartment in the amount of the legal stabilized rent in effect at the time the parties entered into the initial deregulated lease that has been declared void.