■ JORDAN LEVINSON, Respondent, v 390 WEST END ASSOCIATES, L.L.C., Appellant. [802 NYS2d 659]—

Order, Supreme Court, New York County (Barbara R. Kapnick, J.), entered June 16, 2004, which, to the extent appealed from, remanded the issue of plaintiff's initial legal stabilized rent to the Division of Housing and Community Renewal (DHCR) for determination in accordance with DHCR's default formula, granted plaintiff's motion for leave to amend the complaint to assert an eighth cause of action, denied defendant's cross motion insofar as it sought payments for past use and occupancy of the subject apartment, and granted such cross motion insofar as it sought payments for future use and occupancy to the extent of directing plaintiff to pay defendant $903.31 per month commencing July 1, 2004, unanimously modified, on the law, the facts and in the exercise of discretion, to deny plaintiff's motion for leave to amend the complaint, and to grant defendant's cross motion for use and occupancy payments to the extent of directing plaintiff, within 20 days of service of a copy of this order with notice of entry thereof, to post a bond in the amount of $38,220.48 as security for his potential liability for past use and occupancy (at the rate of $1,061.68 per month) during the 36-month period from July 1, 2001 to June 30, 2004, and, prospectively, to pay use and occupancy for months beginning after the date of this order at the rate of $1,061.68 per month, all without prejudice to either party's position concerning the legal stabilized rent at the present or any future time, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered September 20, 2004, which denied defendant's motion for reargument or modification of the order entered June 16, 2004, unanimously dismissed, without costs, as academic, in view of the disposition of the appeal from the order entered June 16, 2004.

Plaintiff Levinson has been the tenant of apartment 7KS, a two-bedroom unit in defendant landlord's building at 390 West End Avenue in Manhattan, since July 1, 1991, pursuant to a two-year lease of that date and two-year renewals executed in 1993, 1995, 1997 and 1999. Because the tenancy prior to Levinson's had been rent-controlled, Levinson's tenancy was required to be rent-stabilized if he used the apartment as his primary residence. Levinson's lease, however, provided that he did not intend to use the apartment as a primary residence, and that the apartment would therefore be exempt from rent stabilization during his tenancy. Accordingly, Levinson's initial rent was set at a rate in excess of what was permissible under

the Rent Stabilization Code.[1] In addition, Levinson consented to have a declaratory judgment entered against him stating that the apartment was not his primary residence and would be exempt from rent stabilization during his tenancy. Such a consent judgment was entered in the Supreme Court, New York County, in April 1991.

As both sides now concede, the recitations in the lease and consent judgment that Levinson did not intend to use the apartment as his primary residence were false. In fact, Levinson has continuously used the apartment as his primary residence since the commencement of his tenancy. According to Levinson, landlord demanded that he agree to the avoidance of rent stabilization (and also that he pay a $30,000 "key money" fee) as a condition to having the apartment leased to him. It is undisputed that Levinson entered into the lease and consent judgment with the advice of counsel.

In 2001, landlord reopened the 1991 declaratory judgment action, seeking to vacate the consent judgment that had been entered therein. As both sides agreed that their statements in the lease and papers supporting the consent judgment that the apartment would not be used as a primary residence were false, and that Levinson's agreement not to use the apartment as a primary residence was in any event void as contrary to public policy (*see Draper v Georgia Props.*, 94 NY2d 809 [1999]), Supreme Court (Diane A. Lebedeff, J.) rendered an order vacating the consent judgment in May 2001, and dismissed the action. Justice Lebedeff declined to determine the lawful rent, since that issue (which, the court observed, could be determined in proceedings before the DHCR) was "not raised by the pleadings."

In February 2002, Levinson commenced the instant action seeking, among other relief, a declaration that the legal stabilized rent for the premises as of that time was the same as the last rent paid by the prior tenant in 1991 (which rent, the parties now agree, was $903.31 per month).[2] Levinson also sought to recover past rent overcharges. Landlord answered the complaint and asserted counterclaims essentially seeking to

1. Levinson's initial rent was $1,600 per month. The lease provided that, upon each two-year renewal, rent would increase in accordance with rent stabilization guidelines. Under the 1999 renewal lease (the last one Levinson executed), the monthly rent was $1,944.28.

2. Levinson previously took the position that the prior tenant's rent was $593.41, but his brief on this appeal concedes landlord's point that this figure was the prior tenant's rent in 1984, and that, at the conclusion of the tenancy in 1991, the legal regulated rent had risen to $903.31.

validate the rents Levinson had been paying under his renewal leases through June 2001, and to require Levinson either to accept renewal leases increasing his previous rent in accordance with rent stabilization guidelines or, alternatively, to vacate the apartment. Landlord's theory apparently was that Levinson's challenge to any of the rents he had been paying since 1991 was barred by the applicable four-year statute of limitations (Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26-516 [a], as amended by the Rent Regulation Reform Act of 1997 [RRRA] [L 1997, ch 116, § 33]; *see also* CPLR 213-a, as amended by RRRA § 34). Since Levinson had ceased paying rent upon the expiration of his 1999 renewal lease on June 30, 2001, landlord also sought to recover unpaid rent for the period since July 1, 2001, and payments for use and occupancy of the apartment during the pendency of the action.

After joinder of issue in this action, Levinson moved for (among other relief) summary judgment on the issue of the legal rent. In the alternative, Levinson sought a hearing for the purpose of determining the legal rent in accordance with a certain default formula that DHCR had devised for use in such cases. In a prior case involving a different apartment in the same building, entitled *Thornton v Baron*, Supreme Court, New York County, had ruled that this default formula (the *Thornton* formula) should be used to determine the legal rent for an apartment for which landlord had used a scheme similar to the one employed here to avoid rent stabilization.[3] This result was later affirmed by this Court and, subsequently, by the Court of Appeals (*see Thornton v Baron*, 4 AD3d 258 [2004], *affd* 5 NY3d 175 [2005]).

In the June 2004 order appealed from, Supreme Court denied Levinson's motion insofar as it sought a final determination of the issue of legal rent. Insofar as the motion sought a hearing to determine the legal rent issue, the court granted the motion only to the extent of remanding that issue to the DHCR for application of the *Thornton* formula. On this appeal, landlord asks us to strike the language in Supreme Court's order directing DHCR to apply the *Thornton* formula. We decline to do so.

The Court of Appeals' affirmance of our decision in *Thornton* confirms that the *Thornton* formula ("the lowest rent charged for a rent-stabilized apartment with the same number of rooms

3. The arrangement in *Thornton* differed from the one here chiefly in that it involved an "illusory tenancy," in which the nominal tenant entering into the unlawful, purportedly nonstabilized lease never actually occupied the apartment, but immediately sublet it at a still higher rent (*see Thornton v Baron*, 5 NY3d 175, 178 [2005]).

in the same building on the relevant base date" [5 NY3d at 180 n 1]) should be used to determine the base rent in an overcharge case where, as here, no valid rent registration statement was on file as of the base date.[4] Consistent with the aforementioned four-year statute of limitations, the base date as of which the *Thornton* formula should be applied is on or about February 15, 1998, four years prior to the commencement of this action.

We are not persuaded by landlord's efforts to distinguish *Thornton*. Here, as in *Thornton*, a default formula must be used to determine the current legal rent, since it is conceded that the rent actually charged on the base date was unlawful, and the statute of limitations does not permit us to use any rental history prior to the base date in setting the current legal rent (*see Thornton*, 5 NY3d at 180). Contrary to landlord's contention, notwithstanding that Levinson (unlike the *Thornton* tenant) is the first rent-stabilized tenant, the adjustment of Levinson's rent is not governed by the provisions applicable to a fair market rent appeal (FMRA) (Rent Stabilization Code [RSC] [9 NYCRR] § 2522.3), because Levinson's time in which to bring an FMRA expired four years after his tenancy began (*see* RSC § 2522.3 [c] [2]).[5] Also without merit is landlord's argument that the default formula of RSC § 2522.6 (b), rather than the *Thornton* formula, should be used. As the Court of Appeals noted in rejecting landlord's proposal to use the RSC § 2522.6 (b) formula in *Thornton*, that provision "by its plain terms" makes its default formula applicable only where the current owner acquired the property since the base date through a judicial sale, bankruptcy proceedings, or a mortgage foreclosure (5 NY3d at 181 n 5).[6] Finally, the absence of an "illusory tenancy" from the instant case does not meaningfully distinguish it from *Thornton*.

---

**4.** While landlord apparently did file rent registration statements setting forth Levinson's rents, it is undisputed that the rents set forth in those statements were unlawful.

**5.** *Thornton* precludes any argument that the four-year statute of limitations bars Levinson's present action to the extent it seeks to recover rent overcharges paid during the four years immediately preceding the filing of his complaint, and to set a legal rent prospectively.

**6.** Nor is the RSC § 2522.6 (b) default formula made applicable to this case by RSC § 2526.1 (a) (3) (ii). The latter provision only mandates determination of the base date rent in accordance with RSC § 2522.6 in overcharge proceedings "[w]here the rent charged on the base date cannot be established." In this case, as in *Thornton*, the difficulty is that the rent charged on the base date was illegal, not that such rent "cannot be established." In the case on which landlord relies (*Matter of Cabrini Realty, L.L.C. v New York State Div. of Hous. & Community Renewal*, 6 AD3d 280 [2004]), we deemed the RSC § 2522.6 (b) default formula to apply because of difficulties in determining

The June 2004 order appealed from also decided a cross motion by landlord seeking past use and occupancy since July 1, 2001 (when Levinson stopped paying rent) and prospective use and occupancy pending final determination of the action, without prejudice to the rights of either party. Landlord sought use and occupancy at the rate of the rent under the last renewal lease Levinson had signed ($1,944.28 per month), which landlord argued had been a legal rent. In opposition, Levinson argued that, if landlord were to be granted any use and occupancy, it should be at the rate of the prior tenant's last legal rent (now conceded to be $903.31 per month), which Levinson claimed was his legal rent.

In the June 2004 order, the court granted landlord's cross motion for use and occupancy only to the extent of directing Levinson to pay use and occupancy prospectively during the remainder of the pendency of the action, commencing July 1, 2004, at the rate of $903.31 per month, without prejudice to either party's rights. The court did not order Levinson to pay any past use and occupancy. For the reasons explained below, we now modify to require Levinson to post a bond to cover his potential liability for past use and occupancy as of the time of the order appealed from (i.e., from July 1, 2001 to June 30, 2004) at the rate of $1,061.68 per month, and, prospectively, to raise the rate of use and occupancy payments pending determination of this action to $1,061.68 per month.

We turn first to the issue of the rate at which use and occupancy should accrue. We have held above that Levinson's legal rent as of the base date (on or about February 15, 1998) should be determined by use of the *Thornton* formula, i.e., "the lowest rent charged for a rent-stabilized apartment with same number of rooms in the same building on the relevant base date" (*Thornton*, 5 NY3d at 180 n 1). We see no reason not to use the same formula to derive a rate for the payment of use and occupancy pendente lite. Landlord argues that, to the extent the *Thornton* formula applies (as we have held it does), use and occupancy should be assessed at the rate of $1,061.68 per month, which, it represents, was the lowest stabilized rent for a two-bedroom apartment in the building in February 1998. Since Levinson does not dispute this, we set the rate of use and occupancy at $1,061.68·per month. To reiterate, our setting this rate of use and occupancy pendente lite is without prejudice to the rights of either party with respect to the ultimate determination of any issue in this action.

---

what the rent for the apartment in fact had been on the base date (*id.* at 281). Thus, *Cabrini* is inapposite.

We also find that landlord should have been granted retroactive use and occupancy, and we therefore modify to require Levinson to post a bond for $38,220.48 (the amount of use and occupancy that accrued during the 36 months that no rent was paid, from July 1, 2001 to June 30, 2004) pending the outcome of this litigation (*see 61 W. 62nd Owners Corp. v Harkness Apt. Owners Corp.*, 202 AD2d 345 [1994]). It is undisputed that Levinson did not pay any rent for occupying the subject apartment for three years, from July 1, 2001 until the motion court's prospective use and occupancy order took effect on July 1, 2004. Consistent with Real Property Law § 220, it has long been held that a dispute concerning the amount of rent owed is no reason to allow a tenant to occupy the landlord's real property gratis (*see Goldman v Segal*, 278 AD2d 74 [2000]; *East 4th St. Garage v Estate of Berkowitz*, 265 AD2d 249 [1999]; *Eighteen Assoc. v Nanjim Leasing Corp.*, 257 AD2d 559 [1999]; *Trump CPS v Meyer*, 249 AD2d 22 [1998]; *MMB Assoc. v Dayan*, 169 AD2d 422 [1991]). While Levinson argues that landlord's liability for past overcharges (which tenant argues will be subject to trebling) may far exceed the amount Levinson owes for the period during which he paid nothing, Levinson has not come forward with any specific facts suggesting that there is a real danger that landlord may ultimately be unable to satisfy a final judgment against it in this action.

Finally, the June 2004 order also granted a motion by Levinson for leave to amend his complaint to add an eighth cause of action, seeking damages for an alleged breach of the original lease agreement to exempt Levinson's tenancy from rent stabilization. Although leave to amend a pleading is generally to be "freely given" (CPLR 3025 [b]), leave to amend should have been denied in this case, since the proposed additional cause of action is patently without merit as a matter of law. The theory of the proposed eighth cause of action is that Levinson's original lease was a valid contract insofar as it purported to displace rent stabilization. This is completely inconsistent with the determination of the order vacating the 1991 consent judgment, by which order Levinson is bound. Even if the matter had not been previously determined, it is clear as a matter of law that the lease, insofar as it sought to evade rent stabilization, was void (*see Draper v Georgia Props.*, 94 NY2d 809 [1999], *supra*). To the extent the aim of the proposed eighth cause of action is to furnish a theory for recovering pre-February 1998 rent overcharges in the guise of contractual damages, the applicable four-year statute of limitations (CPLR 213-a) is not so easily avoided. Concur—Friedman, J.P., Sullivan, Gonzalez, Sweeny and Catterson, JJ.