Liggett v Lew Realty LLC (2022 NY Slip Op 07000)

Liggett v Lew Realty LLC

2022 NY Slip Op 07000

Decided on December 08, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 08, 2022

Before: Gische, J.P., Kern, Gesmer, Scarpulla, Rodriguez, JJ. 

Index No. 160420/21 Appeal No. 16493 Case No. 2022-01973 

[*1]K.E. Liggett, Plaintiff-Respondent,
v
Lew Realty LLC, Defendant-Appellant.

Borah, Goldstein, Altschuler, Nahins & Goidel, P.C., New York (Paul N. Gruber of counsel), for appellant.
Newman Ferrara LLP, New York (Roger A. Sachar of counsel), for respondent.

Order, Supreme Court, New York County (Paul A. Goetz, J.), entered on or about April 8, 2022, which denied defendant's motion to dismiss the complaint, reversed, on the law, without costs, the motion is granted and the complaint dismissed.
Plaintiff, the current tenant of the subject apartment, commenced this action seeking a declaration that her tenancy is subject to the Rent Stabilization Law (RSL) and that the premises were illegally decontrolled in 2000 when defendant owner and nonparty Edward McKinney reached a "private agreement" circumventing initial rent registration procedures for decontrolling the apartment.
The private agreement that plaintiff refers to is a March 9, 2000 stipulation executed by defendant and McKinney settling the licensee holdover proceeding that defendant commenced against McKinney after Edward Brown, the former rent controlled tenant of the premises, died.
Pursuant to the 2000 stipulation, which was so-ordered by Civil Court, defendant and McKinney agreed that the apartment was no longer subject to rent control, but rather rent-stabilized. They stipulated that the initial legal regulated rent for the apartment would be $1,650 per month. Defendant agreed to offer and McKinney agreed to accept a two-year rent-stabilized lease. They also agreed that McKinney would pay, and defendant would accept, the lower preferential rent of $650 per month, plus allowable renewal increases. The preferential rent would remain in effect for as long as McKinney remained the tenant and did not challenge the rent. Those further terms were set forth in a rider to the lease. After McKinney accepted and signed the lease, defendant filed it with DHCR, attaching the so-ordered stipulation, the lease rider and proof it had mailed the entire package to McKinney, along with a Notice of Initial Rent.
An agreement by a tenant to waive the benefit of any provision of the rent control law is expressly prohibited and void (9 NYCRR 2200.15; Grasso v Matarazzo, 180 Misc 2d 686, 687 [App Term, 2d Dept 1999]). However, when McKinney and defendant settled their dispute over McKinney's status, McKinney was not a tenant (Kent v Bedford Apts. Co., 237 AD2d 140 [1st Dept 1997])[FN1]. He was not on the lease and had no evident rights, other than being an occupant of the apartment who claimed that he had succession rights when Brown died.[FN2] Defendant, on the other hand, denied that McKinney was anything other than a squatter/licensee or possible roommate of the deceased. By entering into the 2000 stipulation, both sides, represented by counsel, resolved their dispute as to whether McKinney had any statutory right to the apartment. By doing so, McKinney and defendant chose the certainty of settlement, rather than the uncertainty of a judicial declaration about McKinney's status (Kent at 140). There is no public policy for disregarding that choice (id.).
What plaintiff now seeks to do is step into McKinney's shoes and assert rights that she claims McKinney [*2]had when he agreed to the terms of the 2000 stipulation, but waived. She claims that the 2000 stipulation is little more than a "sweetheart deal" that allowed defendant to circumvent the usual procedures attendant to decontrol and initial rent setting. There is, however, no factual basis for plaintiff's challenge based on McKinney having Braschi rights some 20 years ago (see Braschi v Stahl Assocs. Co., 74 NY2d 201 [1989]).
Although plaintiff contends this is not a fair market rent case, she raises arguments implicating the issue of how rents are set. When a rent-controlled apartment becomes vacant, it becomes subject to the rent stabilization regime and the first rent is a market rent. Accordingly, once Brown vacated the apartment, it was no longer subject to rent control. At that point the first tenancy was subject to the RSL, which is what defendant and McKinney agreed to in the 2000 stipulation. Defendant was also obligated to provide McKinney with notice in writing by certified mail reciting of the initial legal regulated rent for the apartment and informing him that he had a right to file for an application for adjustment of the initial legal regulated rent within 90 days of the certified mailing (9 NYCRR 2523.1; Matter of Park v New York State Div. of Hous. & Community Renewal, 150 AD3d 105 [1st Dept 2017], lv denied 30 NY3d 961 [2017]). Regardless of any waiver, no Fair Market Rent Appeal (FMRA) was timely filed. Instead, defendant and McKinney settled their disputes in a pending holdover proceeding. Furthermore, where a FMRA is filed four years or more after the first date the housing accommodation is no longer subject to rent control, the application "shall be dismissed" as untimely (9 NYCRR 2522.3[c], 2523.1; Matter of Park, 150 AD3d at 113-114; see also 200 Haven Owner, LLC v Drachman, 73 Misc 3d 1207[A] [Civ Ct, NY County 2021]]. While in certain circumstances the right to file an FMRA may pass on to the next tenant to occupy the apartment, those circumstances (improper notice to the first tenant, or evidence of fraud), are not present here (Matter of Park, 150 AD3d at 114). The time to challenge the initial legal regulated rent has long expired. Moreover, there are no allegations that a FMRA would have been successful in proving that the first stabilized rent exceeded the market value.
Inasmuch as no FMRA was timely filed, and the time to do so has expired, plaintiff is no longer able to challenge the $1,650 initial legal regulated rent defendant and McKinney agreed to in their so-ordered 2000 stipulation. Further arguments by plaintiff, that the actual legal rent eligible for board guideline increases is the preferential rent, not the legal rent, are unavailing. A preferential rent is the amount of rent charged to and paid by the tenant that is less than the legal regulated rent for the housing accommodation (9 NYCRR 2521.2). Here, despite the dissent's contention, the stipulation in the record clearly shows that both parties agreed [*3]that $650 was the preferential rent, but $1,650 was the legal rent that was subject to applicable guidelines increases and other increases authorized by law.[FN3] The stipulation, together with the lease and notice of initial rent, was then registered. And, the legal rent was registered and paid each year until the high rent vacancy threshold was reached.
The claim for violation of Real Property Law § 226-c should have been dismissed because documentary evidence establishes that defendant met the notice requirements of the provision. In any event, nothing suggests that the legislature intended a private right of action under the statute (see Konkur v Utica Academy of Science Charter Sch., 38 NY3d 38, 40-41 [2022]).
All concur except Gesmer, J. and Rodriguez, J. who dissent in a memorandum by Gesmer J. as follows:

Gesmer, J. (Dissenting)
 

I respectfully dissent from the portion of the majority's decision that grants defendant's motion to dismiss plaintiff's claim that her apartment is subject to the Rent Stabilization Law. As set forth below, I find that defendant did not meet its burden on its pre-answer motion to dismiss to demonstrate either that there is documentary evidence disposing of plaintiff's claims, or that plaintiff failed to state a cause of action. Rather, I would find that plaintiff has sufficiently pleaded that the stipulation that McKinney and defendant executed in 2000 (the 2000 stipulation) was void under applicable statutes, as interpreted by our Court and the Court of Appeals. Accordingly, I would vote to affirm the portion of the motion court's decision that denied defendant's motion to dismiss the first, third and fourth causes of action.[FN4]
The 2000 stipulation undermined the statutory process by which initial regulated rents are set. The Rent Stabilization Code provides that where, as here, a formerly rent controlled apartment is vacated and becomes subject to rent stabilization, "the initial legal regulated rent shall be the rent agreed to by the owner and the tenant and reserved in a [rent-stabilized] lease," subject to the tenant's right to pursue a Fair Market Rent Appeal (FMRA) (9 NYCRR 2521.1[a][1]). Thus, the process has three components: the landlord sets the rent, the tenant agrees to pay it, and, if the tenant is unhappy with the amount, the tenant has the right to challenge the rent through a FMRA, which will be decided by the Division of Housing and Community Renewal, subject to court review.
Of these components, only the first was present here, in that the landlord set the legal regulated rent at $1,650. The second component was not present, since tenant did not agree to pay that amount; rather, the tenant agreed to pay only $650 per month, plus Rent Guideline Board increases on that amount, for the duration of his tenancy. The landlord's agreement to that preferential rent for the tenant's entire tenancy caused the tenant to have no incentive to challenge the legal regulated rent. But the 2000 stipulation [*4]went beyond just removing the tenant's incentive to exercise his statutory right. Rather, in the 2000 stipulation, the tenant affirmatively agreed not to exercise his right to challenge the rent through a FMRA, thus removing the crucial third component for properly setting the initial legal regulated rent.
This sequence of events had two legal implications. First, McKinney's waiver of his right to bring a FMRA is void as a waiver of his rent stabilization rights (9 NYCRR 2520.13; 9 NYCRR 2521.1[a][1]). Second, McKinney and defendant virtually ensured that the apartment would be deregulated when McKinney vacated, because the application to the illegal rent of vacancy increase and high rent vacancy decontrol in effect at that time would cause the apartment to be deregulated. This is exactly what occurred. This also constituted an impermissible waiver of rent stabilization rights (Drucker v Mauro, 30 AD3d 37, 38 [1st Dept 2006], lv dismissed 7 NY3d 844 [2006]).
In Drucker, we held that a provision in a stipulation that violates the Rent Stabilization Law is void, even when it is beneficial to the tenant.[FN5] We should apply the same principle here and find that the 2000 stipulation, though beneficial for Mr. McKinney, is void. Our holding in Drucker was based in large part on this Court's recognition that "[t]he pervasive policy of the [Rent Stabilization Law] is to provide an adequate supply of affordable housing in the City of New York. . . . Central to the statutory scheme is preventing the exaction of excessive rents by landlords" (id. at 40 [citations omitted]). Accordingly, we held that an agreement to an artificially enhanced rent that may not harm the parties can nevertheless adversely affect future tenants, including by "subject[ing] the premises to luxury decontrol" (id.), and is therefore illegal. That is what occurred here.
As we said almost 20 years ago,
"[t]he initial stabilized rent is. . . of crucial importance because it establishes the base on which all subsequent lawful stabilized rents are determined.
"To protect against rent-gouging by landlords and to insure that stabilized rents do not exceed fair-market levels, the apartment's initial [rent stabilized] rent is made subject to the tenant's right to challenge that rent in an FMRA" (Matter of Verbalis v New York State Div. of Hous. and Community Renewal, 1 AD3d 101, 102 [1st Dept 2003]).
Here, McKinney and defendant agreed to an initial legal regulated rent that was one vacancy increase away from high rent decontrol, and which McKinney would never have to pay and agreed never to challenge. By doing so, they thwarted the Rent Stabilization Code's mechanism for ensuring a fair and reasonable initial legal regulated rent: a true arm's length negotiation in which the tenant has both the right and the incentive to challenge the initial legal regulated rent if it were unreasonable. "Agreements like the one at issue here distort the market without benefitting the people the rent [*5]stabilization laws were designed to protect" (Riverside Syndicate, Inc. v Munroe, 10 NY3d 18, 23 [2008]).
The majority asserts that plaintiff fails to allege that the first rent-stabilized rent exceeded fair market value. This is incorrect. Plaintiff correctly argues in her complaint, to the motion court and to this Court, that the only rent that the landlord proposed and McKinney agreed to pay was $650 per month, that this sum was the only rent subject to the arm's length negotiation contemplated by the Rent Stabilization Code to establish fair market value, and that it should therefore have been registered as the initial legal regulated rent.
Defendant made two arguments to the motion court in support of its motion to dismiss the action, which the motion court properly rejected. First, it argued that plaintiff's claims were untimely. However, contrary to defendant's characterization, plaintiff does not challenge the fair market rent, but rather, the purported deregulated status of the apartment, to which no limitations period applies [FN6] (see Matter of Kostic v New York State Div. of Hous. & Community Renewal, 188 AD3d 569, 569 [1st Dept 2020]; Gersten v 56 7th Ave. LLC, 88 AD3d 189, 200-201 [1st Dept 2011]; see also Riverside Syndicate, Inc., 10 NY3d at 24 [a statute of limitations "does not make an agreement that was void at its inception valid by the mere passage of time"]).
Second, defendant argued that the apartment was lawfully deregulated under the high rent vacancy decontrol provision in place in 2001-2003, by adding on the permissible rental adjustments for alleged improvements and statutory vacancy allowances. However, defendant's claim is only valid if the "initial legal regulated rent" set forth in the 2000 stipulation was a lawful rent. For the reasons set forth above, I would find that plaintiff has sufficiently pleaded that it is not.
The majority states incorrectly that plaintiff argues that the 2000 stipulation was unlawful because McKinney impermissibly waived his right to succeed to a rent controlled tenancy when he signed the 2000 stipulation. However, this is a misstatement of plaintiff's claim. Plaintiff did not make this claim in her complaint, in opposition to defendant's motion to dismiss, or on this appeal. In fact, it is defendant who raises this claim for the first time on appeal.[FN7]
Rather, plaintiff argues that when Mr. McKinney signed the 2000 stipulation, he impermissibly waived rent stabilization protections both for himself and for future tenants because he agreed to an "initial legal regulated rent" of $1,650 that he would never have to pay, he agreed never to challenge that rent, and he had no incentive to challenge it as a result of the promised permanent preferential rent of $650.
Defendant and my colleagues contend that McKinney could not have waived any rent stabilization rights when he signed the 2000 stipulation because he was not then a tenant, citing Kent v Bedford Apts. (237 AD2d 140 [1st Dept 1997[*6]]). However, the Court of Appeals implicitly overruled Kent in Jazilek v Abart Holdings, LLC (10 NY3d 943 [2008], supra). In Jazilek, the parties had resolved an earlier holdover proceeding with a stipulation providing that the respondent (described variously as an illegal subtenant or roommate of a primary tenant who had vacated the rent-stabilized apartment), would become the primary tenant at an agreed upon rent. Mr. Jazilek then signed a market rate lease, but later commenced an action seeking a declaration that he was a rent-stabilized tenant. The motion court denied the landlord's motion to dismiss, and the landlord appealed. Citing Kent, this Court reversed, determining that the stipulation was not void as an impermissible waiver of rent stabilization rights, since Mr. Jazilek had no legal status as a tenant when he entered into the stipulation (Jazilek, 41 AD3d 124, 125 [1st Dept 2007]). The Court of Appeals reversed, holding that it did not matter that Jazilek was not a tenant "of record" when he entered into the stipulation. Since the terms of the stipulation impermissibly waived rent stabilization rights, the Court of Appeals held that the stipulation was void (Jazilek, 10 NY3d at 944; see also 9 NYCRR 2520.13).[FN8]
Similarly, this Court has previously noted in Matter of Missionary Sisters of Sacred Heart, Ill. v New York State Div. of Hous. and Community Renewal that the Rent Stabilization Law was enacted, inter alia, to "prevent the exaction of 'unjust, unreasonable and oppressive rents' and to 'forestall profiteering, speculation and other disruptive practices' in the housing market" (283 AD2d 284, 287 [1st Dept 2001] [citations omitted]; see also Administrative Code of City of NY § 26-501). Defendant cites Missionary Sisters for the proposition that it was permissible under the applicable law in 2000 to charge a tenant a preferential rent. However, that case did not involve a tenant who agreed to an initial legal regulated rent that would never apply to him, which he agreed never to challenge, and that would only serve to deregulate the apartment upon his departure.
Furthermore, even if Kent were still good law, it is distinguishable from the facts of this case in two respects. First, the tenant in Kent had admitted in the stipulation at issue that her primary residence was outside of New York City (Kent v Bedford Apts. Co., 1996 WL 34574804 [Sup Ct, NY County 1996]; see also Draper v Georgia Props., Inc., 230 AD2d 455, 459 [1st Dept 1997], affd 94 NY2d 809 [1999] ["tenants [in Kent] actually were holdover occupants who, by virtue of the stipulation, secured lease rights which they otherwise would not have had"]). Thus, she was not entitled to a rent-stabilized lease. Second, here, the lease rider, which McKinney signed on the same day as the 2000 stipulation, contained the same provision as in the stipulation, that, despite the "initial legal regulated" $1,650 monthly rent McKinney agreed to, "for as long as [McKinney] remains in [*7]occupancy," he would only have to pay $650 per month plus Rent Guidelines Board increases on that amount. Accordingly, unlike the tenant in Kent, McKinney had Rent Stabilization rights under the lease on the same day he executed the stipulation.
Defendant's submission of documentation of alleged improvements to the apartment after McKinney vacated do not constitute documentary evidence supporting dismissal because the permissible increase based on those improvements alleged by defendant ($335.08) only increased the rent above the high rent vacancy amount under the law at the time if the $1,650 figure is used as the initial legal regulated rent. Because plaintiff has sufficiently called into question the legality of the 2000 stipulation setting that initial legal regulated rent, I would vote to affirm the motion court's denial of defendant's motion to dismiss on that basis.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 8, 2022

Footnotes

Footnote 1: We disagree with the dissent's assertion that Kent was implicitly overruled by Jazilek v Abart Holdings, LLC (10 NY3d 943 [2008]). In any event, Jazilek is inapplicable because it concerned a Housing Court stipulation that fixed rent at a sum in excess of the legal limit whereas the agreement between McKinney and defendant did not.

Footnote 2: The fact that the parties disputed as to whether McKinney was entitled to protection under rent control laws renders this case distinguishable from Drucker v Mauro upon which the dissent relies (30 AD3d 37, 39 [1st Dept 2006], lv dismissed 7 NY3d 844 [2006]). Given the dispute, McKinney and defendant were free to enter into a stipulation resolving whether and how the rent control laws applied to McKinney's lease, unlike in Drucker, where it was not disputed that rent stabilization laws applied to the occupant's lease (see 30 AD3d at 39).

Footnote 3: Although the Housing Stability & Tenant Protection Act of 2020 has considerably changed how rents are set and increased, this action concerns events that occurred well before the change in the law. Neither side argues that the HSTPA would require a different result here.

Footnote 4: However, I agree with my colleagues that plaintiff's claim that defendants violated Real Property Law § 226-c should have been dismissed.

Footnote 5: The majority attempts to distinguish Drucker from this case by claiming that "it was not disputed that rent stabilization laws applied to the occupant's lease" in that case. However, as discussed below, the Court of Appeals has held that a stipulation that purports to waive rent stabilization rights is invalid regardless of the tenant's status (Jazilek v Abart Holdings LLC, 10 NY3d 943, 944 [2008]; see also 9 NYCRR 2520.13).

Footnote 6: For this reason, contrary to the majority's claim, plaintiff does not have to demonstrate that an FMRA appeal (the right which McKinney had waived in any event) would have succeeded.

Footnote 7: Defendant may have been responding to the motion court's citation of Lex & Third 116th St. Corp. v Marrero (23 Misc 3d 59 [App Term 1st Dept 2000]) in the order appealed from, even though neither party cited it in their motion papers. In Lex, a tenant was found to have impermissibly waived the right to succeed to a rent-controlled tenancy by entering into a rent-stabilized lease. That case has no bearing on the claim that plaintiff actually made in her complaint.

Footnote 8: The majority attempts to distinguish Jazilek on the basis that it involved the impermissible waiver of a different rent stabilization right than the ones at issue in this case. However, the reasoning in Jazilek that a party to an agreement may not waive rent stabilization rights for themselves or for future tenants, regardless of whether a party is a tenant of record at the time they execute the agreement, is equally applicable no matter what particular right the agreement purports to waive. Indeed, the Rent Stabilization Code does not limit the prohibition on waivers to any particular right, but rather provides that an agreement to waive "the benefit of any provision of the RSL or this Code is void" (9 NYCRR 2520.13 [emphasis added]).