■ In the Matter of SUSAN A. KAPLAN, Respondent, v WILLIAM J. BRATTON, as Police Commissioner of the City of New York, Appellant. [673 NYS2d 66] —Order, Supreme Court, New York County (Emily Goodman, J.), entered December 19, 1996, granting the petition to annul respondent Commissioner's determination which denied petitioner's application for a pistol license, unanimously reversed, on the law and the facts, without costs, the petition denied, and the proceeding brought pursuant to CPLR article 78 dismissed.

On May 21, 1994, petitioner, a urologist residing in New Jersey, applied to the New York City Police Department License Division for a Carry Pistol License. As required by 38 RCNY 5-08 (b) (8) (i), she attached a letter of necessity, in which she set forth the reasons why she needed the permit.

She alleged that she traveled at night in New York City to meet with patients or to attend to emergencies at the hospitals with which she was affiliated (Columbia Presbyterian, St. Luke's-Roosevelt and St. Vincent's), and that she feared for her personal safety. The Director of Urology at St. Luke's-Roosevelt submitted a letter in support of these assertions.

At her interview with the License Division, petitioner admitted that although she was on call 24 hours a day, her office hours were generally 7:30 A.M. to 8:00 P.M. In over 10 years of practicing medicine, she had never been the victim of a crime. She had burglar alarms in her car and office and was also trained in martial arts.

Upon investigation, the License Division learned from the Senior Vice President at St. Luke's-Roosevelt Hospital that the hospital did not allow anyone to carry firearms on the premises. The License Division was unable to discover whether petitioner's other hospitals had similar policies.

Furthermore, because petitioner did not have a carry permit in New Jersey, where she lived, she would have had to unload her handgun and place it in a locked box before entering New Jersey every night. The License Division was concerned that this would create a public safety risk (as this Court found in *Matter of Fondacaro v Kelly*, 234 AD2d 173, 177, *lv denied* 89 NY2d 812). Petitioner subsequently submitted a phone bill with a New York home address, but since the phone number was the same as the one previously indicated as her home number in New Jersey, the License Division did not consider this sufficient proof of a change of residence.

On March 29, 1995, the License Division denied petitioner's application. As set forth in the notice of disapproval, the reasons for the denial were as follows: Her business was not the type normally targeted by armed robbers; she did not carry or deposit large amounts of cash; St. Luke's-Roosevelt objected to staff carrying weapons on the premises; and, the information she submitted was not consistent with the Division's own investigation, i.e., with respect to her place of residence. Overall, petitioner failed to distinguish herself from the millions of people who come to work in New York without a concealed weapon.

Petitioner then appealed to the License Division, presenting new documentation of her alleged move to New York and the names of other doctors who had been granted a carry permit. When this appeal proved unsuccessful, she brought an article 78 proceeding to compel the Division to grant her a license. The IAS Court found that the Division's disapproval of her ap-

plication was arbitrary and capricious. According to the court, the proper inquiry was not how petitioner was different from others whose applications had been denied, but how she was different from those whose applications had been granted. The Division had not presented facts distinguishing her from this latter class of persons.

The issuance of a pistol license is not a right, but a privilege subject to reasonable regulation. The Police Commissioner has broad discretion to decide whether to issue a license (*Sewell v City of New York*, 182 AD2d 469, 472). Judicial review of a discretionary administrative determination is limited to deciding whether the agency's actions were arbitrary and capricious (*Matter of Sullivan County Harness Racing Assn. v Glasser*, 30 NY2d 269, 277). The agency's determination must be upheld if the record shows a rational basis for it, even where the court might have reached a contrary result (*supra,* at 278).

Contrary to the intent of the statutes and regulations at issue herein, the IAS Court effectively placed the burden on the License Division to show why petitioner was not entitled to a permit. In fact, Penal Law § 400.00 (2) (f) requires the petitioner to show "proper cause" for issuance of the permit, which this Court has interpreted to mean "a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession" (*Matter of Klenosky v New York City Police Dept.*, 75 AD2d 793, *affd* 53 NY2d 685). The Police Department's regulations regarding Carry Pistol Licenses, at 38 RCNY 5-03 (b), also require a showing of "extraordinary personal danger, documented by proof of recurrent threats to life or safety," and add that "the mere fact that an applicant * * * resides or is employed in a 'high crime area,' does not establish 'proper cause'".

When the proper standard of proof is applied, it is clear that respondent's decision has a rational basis. The License Division correctly required petitioner to show an extraordinary threat to her safety and, pursuant to its own regulations as interpreted by this Court, rationally concluded that petitioner's general allegations about her work hours and location were insufficient. There was also the hazard posed by her need to unload the pistol in her car at night before crossing State lines. The record also supports the License Division's conclusion that this risk had not been alleviated by petitioner's purported change of residence.

The instant case is closely akin to *Matter of Fondacaro v Kelly* (234 AD2d 173, *supra*), in which this Court upheld the denial of a Carry Pistol License to a doctor who practiced in

New York City and periodically answered emergency calls at night. Like petitioner herein, he alleged general fear for his safety but did not present any instances of threats, attacks or extraordinary danger. He also noted that other doctors in Manhattan had been granted licenses (*supra,* at 174). Also like petitioner herein, he lived in New Jersey but had no carry permit there, thus necessitating that he load and unload his pistol on the road. These factors were held to support the Commissioner's determination (*supra,* at 177). We see no reason to reach a contrary result in the case at bar. Concur—Sullivan, J. P., Rosenberger, Rubin, Tom and Andrias, JJ.