OPINION OF THE COURT
Michael D. Stallman, J.
In this CPLR article 78 proceeding, petitioner pro se challenges a determination of the New York City Police Department (NYPD) License Division, which denied petitioner’s application for a business carry license to carry a concealed handgun in New York City. Petitioner challenges the determination and the City’s handgun licensing procedure as unconstitutional under the Second Amendment of the United States Constitution.
Background
Petitioner asserts that he is a type 01 federal firearms licensee (FFL) firearms dealer since 2011, in the business of selling and traveling with firearms and tactical equipment. It is undisputed that petitioner possesses a NYPD premises residence pistol license and a NYPD rifle and shotgun permit. (Verified petition ¶ 166; verified answer ¶ 62.) Petitioner represents that he seeks to carry a concealed handgun for self-defense, and “for preventing the theft of any equipment in his possession.” (Verified petition ¶¶ 1, 182.) Petitioner states that, under his type 01 FFL license, “petitioner[’s] business address is his residence, and as such he has a stipulated agreement that due to zoning laws he is not allowed to receive or store any business or firearms inventory at his business address.” (Petitioner’s opp mem ¶ 25.)
By a letter dated June 13, 2014 the NYPD License Division denied petitioner’s application because petitioner failed to dem *538 onstrate “proper cause” for carrying a concealed weapon as required under Penal Law § 400.00 (2) (f). The letter states, in relevant part:
“• You have not demonstrated a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession which is required for a license to carry a concealed firearm in public.
“• You did not provide any contracts with current or potential clients with whom you conduct business with as required.
“• You have not shown you have made any sales nor received any payments for any products.
“• You do not have cash or products on hand ready for sale.
“• You have not provided substantial proof that would substantial your claim of carrying any products or demonstrations on a routine basis.” (Verified answer, exhibit I.)
By letter dated October 7, 2014 respondent denied petitioner’s administrative appeal. In relevant part, the letter states:
“38 RNCY 5-03 (a) requires applicants for a Carry Business license who claim a need to carry based upon their employment or business to demonstrate that they routinely engage ‘in transactions involving substantial amounts of cash, jewelry, or other valuables or negotiable items’ and that they furnish documentary proof that the employment requires a firearm, and that the applicant routinely engages in such transactions.
“You have alleged that you require a firearm for business purposes. A careful review of your application and your attorney’s appeal brief fails to convince me that you require a Carry Business license to conduct your business as a sales associate for Armored Mobility Inc. (AMI).
“According to Exhibit B of the appeal brief, you entered into a contract with AMI on April 14, 2010 to function as an independent sales associate selling AMI’s law-enforcement-related products on commission. You claim that these items are in demand by terrorists and criminals, which creates a danger for you while traveling to conduct business; however, that claim is based upon pure *539 speculation, which is unsupported by any evidence. The record shows that you have been an authorized sales associate for AMI since April, 2010 without incident. You also failed to show how your business places you in any greater danger than a dealer who sells other police-related products, e.g. handcuffs, batons or police uniform[s].” (Verified answer, exhibit K.)
This article 78 proceeding followed. Petitioner seeks a judgment annulling respondent’s denial and granting his application for a business carry license to be issued forthwith. Petitioner also seeks a permanent injunction against respondent from enforcing Penal Law § 400.00 (2) (f) and 38 RCNY 5-03.
Finally, petitioner seeks a series of declarations. For example, to name just a few, petitioner seeks declarations as to the “proper standard of review and burden of proof” under the Equal Protection Clause of the Fourteenth Amendment; that federal regulations (27 CFR 478.50, 478.100) “dictate[ ] that FFLs are required to conduct business from their licensed premises”; that under federal regulations (27 CFR 478.50, 478.100), “FFL’s can ship a firearm to an address that is different from the business premises address identified on the license”; and “as administrative officials who issue carry licenses that Respondent [sic] will cease and desist developing and enforcing their own standards for issuing such licenses.”
Discussion
Petitioner argues that the licensing scheme is unconstitutional in violation of the Second Amendment of the United States Constitution and New York Civil Rights Law § 4, the language of which is nearly identical to that of the Second Amendment. Petitioner notes that the United States Courts of Appeals for the Second, Third, and Fourth Circuits have upheld similar laws (verified petition ¶ 14), but he urges this court to follow two other federal decisions, Moore v Madigan (702 F3d 933 [7th Cir 2012]) and Peruta v County of San Diego (742 F3d 1144 [9th Cir 2014]).
As a threshold matter, respondent’s argument that the petition should be dismissed because petitioner did not comply with CPLR 1012 (b) and notify the Attorney General of the State of New York is moot. Petitioner did notify the Attorney General; by letter dated April 9, 2015 the Assistant Solicitor *540 General stated that the Office of the Attorney General will not intervene in this matter.
New York courts have upheld the constitutionality of the City’s licensing scheme under the Second Amendment. In People v Perkins (62 AD3d 1160 [3d Dept 2009]), the Appellate Division, Third Department held,
“While the United States Supreme Court concluded in that case [District of Columbia v Heller, 554 US 570 (2008)] that the Second Amendment confers a constitutionally protected individual right to keep and bear arms as a means of self-defense within the home, it also held that the right conferred by the Second Amendment — and, by extension, Civil Rights Law § 4 (see Chwick v Mulvey, 2008 NY Slip Op 22486 [U], *19 [2008]) — is not absolute and may be limited by reasonable governmental restrictions
“Moreover, in our view, New York’s licensing requirement remains an acceptable means of regulating the possession of firearms.” {Id. at 1161 [citation omitted].)
The Appellate Division, First Department recently held:
“The licensing scheme at issue satisfies the requisite constitutional standard, intermediate scrutiny, as it serves a governmental interest in maintaining public safety (see Kachalsky v County of Westchester, 701 F3d 81, 93 n 17 [2d Cir 2012], cert denied 569 US —, 133 S Ct 1806 [2013]; New York State Rifle & Pistol Assn. v City of New York, 2015 WL 500172, *7, 2015 US Dist LEXIS 13956, *17-18 [SD NY, Feb. 4, 2015, No. 13-Civ-2115(RWS)]).” (Matter of Delgado v Kelly, 127 AD3d 644, 644 [1st Dept 2015].)
As indicated in Matter of Delgado, the level of review is intermediate scrutiny, not strict scrutiny as petitioner urges.
Because the licensing scheme does not violate the Second Amendment, it follows that the licensing scheme does not violate Civil Rights Law § 4. The language of the statute is nearly identical to that of the Second Amendment; there is nothing to indicate that it was intended, or has been interpreted, as giving greater rights to possess guns or as being more restrictive of state or local regulation under the police power.
The court also agrees with respondent that petitioner fails to state a claim for violation of the Equal Protection Clause of the *541 Fourteenth Amendment of the United States Constitution and the New York State Constitution under the “class of one” theory.
Under the “class of one” theory (which does not allege that the plaintiff belongs to a class or group), the plaintiff alleges that “[he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.” (Village of Willowbrook v Olech, 528 US 562, 564 [2000].) However, the United States Supreme Court has stated,
“There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be ‘treated alike, under like circumstances and conditions’ is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.” (Engquist v Oregon Dept. of Agriculture, 553 US 591, 603 [2008].)
Thus, it is not enough for petitioner to allege that he is entitled to a business carry license because other federally licensed FFL type 01 firearms dealers were issued licenses.
The denial of petitioner’s application was not arbitrary and capricious. Although “proper cause” is not defined in Penal Law § 400.00 (2) (f), case law has interpreted “proper cause” to mean “a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession.” (Matter of Klenosky v New York City Police Dept., 75 AD2d 793, 793 [1st Dept 1980], affd 53 NY2d 685 [1981]; Matter of Kaplan v Bratton, 249 AD2d 199 [1st Dept 1998].) This definition is reflected in the Police Department’s regulations at 38 RCNY 5-03.
Petitioner has not demonstrated that 38 RCNY 5-03 was “ultra vires,” i.e., not properly promulgated. Penal Law § 400.00 (1) grants authority to issue licenses to carry firearms to the “licensing officer,” and the “licensing officer” in the City of New York is the Police Commissioner. (Penal Law § 265.00 [10].) New York City Charter § 1043 (a) states, “Each agency is *542 empowered to adopt rules necessary to carry out the powers and duties delegated to it by or pursuant to federal, state or local law.” 38 RCNY 5-03 appears to have been published in the City Record first on July 1, 1991 and published again on May 31, 2001 when it was amended. Petitioner has not shown that the issuance of 38 RCNY 5-03 failed to comply with the City Administrative Procedure Act. (NY City Charter § 1041 et seq.)
Respondent did not believe that petitioner was exposed to “extraordinary personal danger” due to either “employment or business necessity” or to documented “recurrent threats to life or safety.” (38 RCNY 5-03 [a], [b].) In essence, petitioner asks this court to second-guess the risk of personal danger to which petitioner was exposed due to his work. This individual risk assessment would include the circumstances specific to petitioner — i.e., petitioner alleges that, due to apparent zoning restrictions, he is neither receiving nor storing any business or firearms inventory at his business address.
However,
“[a]n administrative agency, acting pursuant to its authority and within the orbit of its expertise, is entitled to deference, and even if different conclusions could be reached as a result of conflicting evidence, a court may not substitute its judgment for that of the agency when the agency’s determination is supported by the record.” (Matter of Sam Wu v New York City Water Bd., 100 AD3d 470, 470 [1st Dept 2012] [internal quotation marks omitted]; Matter of Tolliver v Kelly, 41 AD3d 156 [1st Dept 2007].)
Here, respondent’s determination was supported in the record. (See Matter of Milo v Kelly, 211 AD2d 488, 488-489 [1st Dept 1995] [“Even assuming that petitioner established that he made weekly cash deposits of approximately $4,000, petitioner did not demonstrate ‘a special need for the license distinguishable from that of other persons similarly situated.’ . . . Moreover, the fact that petitioner, owner of an elevator repair service, works in areas noted for criminal activity and is occasionally called upon for night-time emergencies does not automatically entitle petitioner to a license”].)
Petitioner’s remaining arguments are without merit, for the reasons stated in respondent’s memorandum of law.
Finally, in light of the court’s decision upholding the denial of petitioner’s application for a business carry license, the dec *543 larations that petitioner seeks are denied. “Declaratory judgment ‘is usually unnecessary where a full and adequate remedy is already provided by another well-known form of action.’ ” (Bellefonte Re-Insurance Co. v Volkswagenwerk AG, 102 AD2d 753, 754 [1st Dept 1984], citing James v Alderton Dock Yards, 256 NY 298 [1931].) In addition, “[t]he jurisdiction of this Court extends only to live controversies. We are thus prohibited from giving advisory opinions or ruling on ‘academic, hypothetical, moot, or otherwise abstract questions.’ ” (Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 810-811 [2003] [citations omitted].) The court may not render an advisory opinion on what petitioner may or may not do under federal regulations concerning his FFL licenses. As respondent indicates, the federal regulations pertaining to FFL licenses state, “A license issued under this part confers no right or privilege to conduct business or activity contrary to State or other law.” (27 CFR 478.58.)
Conclusion
It is hereby adjudged that the petition is denied and the proceeding is dismissed.