◼ In the Matter of DANIEL TOLLIVER, Respondent, v RAYMOND KELLY, as Statutorily Designated Handgun Licensing Officer, et al., Appellants. [837 NYS2d 128]—

Order, Supreme Court, New York County (William A. Wetzel, J.), entered April 6, 2006, which granted the petition to annul respondent's determination dated March 29, 2006, denying petitioner's application for a residence pistol license, unanimously reversed, on the law, without costs, the petition denied and the proceeding dismissed.

Petitioner, a 42-year-old systems engineer employed by the U.S. Army at an Army post in northern New Jersey, was the holder of a pistol license and a rifle/shotgun permit. On December 18, 2003, petitioner was arrested and charged with resisting arrest, failing to comply with a police officer's order, and failing to wear his seatbelt. According to the arrest report, the arresting officer observed petitioner, at a checkpoint, not wearing his seatbelt, and asked petitioner to pull over. Petitioner refused, fleeing the scene, and the officer pursued him in his vehicle until petitioner eventually pulled over. However, even then petitioner persisted in his refusal to produce his driver's license and registration. At that point, the officer instructed petitioner to exit his vehicle and put his hands behind his back. Petitioner again refused, pushing and shoving the arresting officer, and flailing his arms. Later that day, pursuant to a plea agreement, petitioner was convicted of disorderly conduct, a violation, and

was issued a conditional discharge for a period of one year to expire on December 17, 2004.

In response to a notice that the License Division had suspended his pistol license and rifle permit, petitioner sent a letter to the License Division in which he did not dispute the charges, but characterized his conduct that day as stupid and stubborn. He acknowledged that he had not been wearing his seatbelt when he was pulled over at a traffic check point, and that he refused to produce his driver's license, but explained that he was "upset" by the delay as he was late for an appointment. He added that he had been unfairly issued a ticket a year earlier by the same officer. He admitted that he drove off and did not pull over until the officer had pursued him for three blocks, and that although he then complied with the officer's directive to get out of his car, he continued to refuse to produce his driver's license or cooperate in his arrest. Instead, he "stupidly" said, "You can arrest me if you want, but I'm not giving it to you." Eventually the officer handcuffed him while he was lying in the street.

Petitioner's pistol license was cancelled by a determination dated March 31, 2004, and he was restricted from reapplying for a pistol license or rifle/shotgun permit until December 18, 2004. He submitted the underlying reapplication on December 27, 2004. In the new application, he disclosed his arrest on December 18, 2003, but emphasized that his ultimate conviction was for disorderly conduct, which he characterized as a minor offense. He further minimized his conduct with the statement that, "While I understand that this incident does not reflect positively on my status as permit holder, I certainly make every effort to be a solid law-abiding citizen . . . ." Petitioner added that he had pleaded guilty to disorderly conduct out of concern that the matter would have an adverse effect on his job with the Department of Defense involving a homeland security project for which he had "Secret" clearance.

His application was denied, as was his administrative appeal.

The IAS court granted petitioner's CPLR article 78 application and directed the issuance of the pistol license. It defined the issue as whether the single incident of the arrest and its surrounding circumstances provided a rational basis for the agency's determination, and emphasized what it characterized as petitioner's "unblemished record of outstanding character . . . his military service, his higher education, and his acknowledgment that his behavior during this traffic incident was inappropriate."

Contrary to the IAS court's conclusion, there was a rational

basis for respondent's denial of petitioner's reapplication for a pistol license, and his determination therefore should not have been disturbed (*see Matter of Papaioannou v Kelly*, 14 AD3d 459, 460 [2005]). The possession of a handgun is a privilege, not a right, that is subject to the broad discretion of the New York City Police Commissioner (*Matter of Papaioannou v Kelly*, 14 AD3d 459, 460 [2005]; *Sewell v City of New York*, 182 AD2d 469, 472 [1992], *lv denied* 80 NY2d 756 [1992]). A court may overturn such an administrative determination only if the record reveals no rational basis for it, and may not substitute its own judgment for that of the agency (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]). Respondent's determination was rationally based, and should not have been annulled.

Respondent properly considered not just the conviction but the underlying, admitted conduct. By petitioner's own account, he engaged in a variety of misconduct, including refusing to obey a lawful police order, fleeing from a police officer in his vehicle resulting in a police chase, and resisting lawful arrest. With this conduct, petitioner exhibited a startling lack of judgment, as well as a lack of respect for police officers carrying out their lawful duties. He has not fully acknowledged that his conduct was wrong, rather than merely inappropriate, and is focused primarily on concern over the impact of his conduct on his job. Nor does petitioner's extensive education and sensitive employment render the denial of his application arbitrary and capricious (*see Matter of Nash v Police Dept. of City of N.Y.*, 271 AD2d 384 [2000]). Moreover, the IAS court erred in describing petitioner's background as including 20 years of military service and an honorable discharge. The record only established that petitioner was employed by the U.S. Army in a civilian capacity.

There was no need for an evidentiary hearing since the relied-upon facts were undisputed. On the admitted facts, not only was the agency's determination not shocking to the conscience, but it was fully supported by the evidence. Concur—Saxe, J.P., Friedman, Williams, Buckley and Kavanagh, JJ.