In the Matter of PARTNERSHIP 92 LP and BUILDING MANAGEMENT Co., INC., Doing Business as BRISTOL MANAGEMENT Co., INC., Appellant, v STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent. [849 NYS2d 43]—

Order and judgment (one paper), Supreme Court, New York County (Karen S. Smith, J.), entered September 15, 2005, which denied the petition to annul a certain determination of respondent State of New York Division of Housing and Community Renewal, dated February 25, 2004, that, inter alia, had directed

petitioner landlord to refund rent overcharges to tenant in the amount of $58,169.89, but declined to impose treble damages on the ground that the presumption of willfulness was rebutted by the landlord, and dismissed the proceeding, affirmed, without costs.

Petitioner Partnership 92 LP and Building Management Co., Inc., doing business as Bristol Management Co., Inc. (92 LP) is the owner and landlord of the residential building designated as 412 East 55th Street, New York, New York. Apartment 3D, which residence is at the core of this matter, is subject to regulation under the Rent Stabilization Law and Code. Patricia Moore was the tenant of the apartment pursuant to a lease which ran from March 1979 to February 1981, at a rate of $520.87 per month. Ms. Moore subsequently renewed the lease, effective March 1, 1981, at a monthly rent of $583.30.

Robert Klimecki began renting the apartment commencing August 1, 1981, although he never resided therein, but instead, pursuant to an agreement he had with the then owner-landlord, rented the apartment to commercial entities for use by their employees or officers. Initially, Klimecki entered into a three-year vacancy lease, which he subsequently renewed for a two-year period effective August 1, 1984. Andrea Bunis leased the apartment in early 1986 and, since it had not been occupied by a rent-stabilized tenant for five years, the prior owner determined the rent by applying the Rent Guidelines Board increases for a three-year vacancy and two-year renewal lease, and arrived at a monthly rent of $903.62.

Bunis, on May 8, 1987, filed an overcharge complaint with respondent State of New York Division of Housing and Community Renewal (DHCR). The prior owner submitted an answer in June 1987, and provided a chart of the rental history of the apartment, which indicated how the rent was calculated. The DHCR, inexplicably, served a second copy of the complaint on the prior owner in 1990, and the owner again provided the DHCR with an answer and rent history for the apartment. Bunis, in response to the owner's allegation that she had been employed by the building's managing agent and had access to all of the apartment's records and the method of calculation, denied that she had any managerial responsibility and alerted the DHCR to the fact that Klimecki was listed as the tenant of four different apartments as of April 1, 1984.

The matter then lay dormant for approximately 3½ years, during which time the building was sold to 92 LP. The DHCR, in April 1994, paradoxically served a third copy of the complaint on 92 LP, to which 92 LP served an answer. The DHCR, in

October 1994, requested that 92 LP provide evidence regarding the apartments leased to Klimecki and, after some additional correspondence, the Rent Administrator denied the complaint, finding no overcharge.

Bunis thereafter filed a petition for administrative review (PAR) and, after a series of adjournments granted to 92 LP, issued an order, dated April 1, 1999, granting the PAR. The DHCR found, in part, that the Rent Regulation Reform Act of 1997 (RRRA), which was applicable to all pending cases, prohibited the examination of rental events occurring more than four years prior to the filing of a complaint. As a result, the DHCR employed May 8, 1983 as the base rent date and, by using "the court approved DHCR default procedure,"[1] arrived at $416.56 as the lawful stabilization rent as of the date of occupancy of Bunis. The DHCR opined that it found the owner in default because it failed to provide an explanation as to why Klimecki was leasing four apartments in the building at the same time and, "[i]n the absence of such explanation, it must be considered that the owner had defaulted in its obligation to provide a rental history showing the lawful rent on the base date of May 8, 1983." The DHCR also concluded that treble damages were not warranted since the owner could have surmised, in good faith, that it had properly calculated the rent by using the last stabilized rent.

Bunis and 92 LP commenced separate CPLR article 78 proceedings challenging different aspects of the DHCR's order, and Supreme Court remitted the matter to the DHCR for further proceedings, including an oral hearing. At the hearing, which was conducted between June 2001 and March 2002, Klimecki testified, inter alia, that he rented the apartments, furnished them, and sublet them to various corporate entities. Klimecki provided utilities, house cleaning and linens and it was left undisputed that he did not, and never intended to, use the subject apartment as his primary residence.

The Administrative Law Judge (ALJ) issued a report, dated October 27, 2003, in which she recommended, inter alia, that the DHCR Commissioner render an order stating that there was no proof an initial rent registration (RR-1) form had been served upon Bunis, or filed with the DHCR, and that treble damages were not warranted because 92 LP had rebutted the presumption of willfulness.

The Deputy Commissioner, by order and opinion dated Febru-

---

1. Pursuant to the default procedure, the rent of the subject apartment is set as of the date of occupancy at the lowest stabilized rent for an apartment in the same building, containing the same number of rooms, as of that date.

ary 25, 2004, granted Bunis's PAR, in part, and as in the prior order, established the initial rent using the default formula and directed 92 LP to refund overcharges in the amount of $58,169.89. The Commissioner declined to impose treble damages, although he did conclude that Klimecki was an illusory tenant.

92 LP subsequently commenced the proceeding at bar, alleging that Klimecki's tenancy was not illusory, but was exempt from rent stabilization due to the fact that it was a nonprimary residence and that his subtenants were exempt because they were commercial tenancies. 92 LP also maintained that the RRRA was inapplicable since it did not take effect until 10 years after the rent overcharge complaint was filed, and because the DHCR had unreasonably and negligently delayed processing this proceeding. 92 LP concluded that the law existing at the time of the complaint was, therefore, applicable and, accordingly, there was no overcharge.

Supreme Court denied the petition and dismissed the proceeding, holding that the DHCR's determination was neither arbitrary nor capricious, nor without a rational basis. Supreme Court found that 92 LP failed to demonstrate the delay in this matter was due to the negligent or willful conduct of the DHCR and, absent such a showing, the law in effect at the time of the determination applies. Supreme Court determined that, in any event, the four-year cutoff date set forth in the RRRA may not be waived. Supreme Court further found that, given Klimecki's testimony, his lease of the apartment in question was clearly illusory. 92 LP appeals and we now affirm.

It is a long-standing, well-established standard that the judicial review of an administrative determination is limited to whether such determination was arbitrary or capricious or without a rational basis in the administrative record (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 230-231 [1974]; *Matter of Cohen v State of New York*, 2 AD3d 522, 525 [2003]), and "once it has been determined that an agency's conclusion has a 'sound basis in reason' . . . the judicial function is at an end" (*Paramount Communications v Gibraltar Cas. Co.*, 90 NY2d 507, 514 [1997], quoting *Matter of Pell*, 34 NY2d at 231; *see also Matter of Smith v New York State Div. of Hous. & Community Renewal*, 27 AD3d 1063 [2006]). Indeed, the determination of an agency, acting pursuant to its authority and within the orbit of its expertise, is entitled to deference (*Matter of Salvati v Eimicke*, 72 NY2d 784, 791 [1988]; *Matter of Tockwotten Assoc. v New York State Div. of Hous. &*

*Community Renewal,* 7 AD3d 453, 454 [2004]), and even if different conclusions could be reached as a result of conflicting evidence, a court may not substitute its judgment for that of the agency when the agency's determination is supported by the record (*Matter of Tolliver v Kelly,* 41 AD3d 156, 158 [2007], *lv denied* 9 NY3d 809 [2007]; *Awl Indus., Inc. v Triborough Bridge & Tunnel Auth.,* 41 AD3d 141, 142 [2007]). Moreover, it is also well settled that an agency's interpretation of the statutes and regulations it is responsible for administering is entitled to great deference, and must be upheld if reasonable (*New York City Campaign Fin. Bd. v Ortiz,* 38 AD3d 75, 80-81 [2006]; *Matter of ATM One, LLC v New York State Div. of Hous. & Community Renewal,* 37 AD3d 714 [2007]; *see also Matter of Herzog v Joy,* 74 AD2d 372, 375 [1980], *affd* 53 NY2d 821 [1981] ["an administrative agency's construction and interpretation of its own regulations and of the statute under which it functions is entitled to the greatest weight"]).

Initially, we can discern no reason, nor are we presented with a viable one, to disturb that branch of the DHCR's determination which found that Klimecki's lease of the apartment constituted an illusory tenancy. In *Matter of Badem Bldgs. v Abrams* (70 NY2d 45, 52-53 [1987]), the Court of Appeals defined an illusory tenancy as a "residential leasehold created in a person who does not occupy the premises for his or her own residential use and subleases it for profit, not because of necessity or other legally cognizable reason. Such tenancies are condemned because they permit the unscrupulous to use the provisions of the rent stabilization laws for financial gain, at the expense of those entitled to the laws' protections to obtain living quarters at reasonable cost, and thereby frustrate the laws' purposes. Thus, both the courts and the administrative agencies charged with overseeing rent stabilization have readily formulated remedies to prevent the use of illusory tenancies . . . ." ([citations omitted]; *see also Primrose Mgt. Co. v Donahoe,* 253 AD2d 404, 405 [1998]). Accordingly, any such lease is not merely voidable, but void as against public policy (*Drucker v Mauro,* 30 AD3d 37 [2006], *lv dismissed* 7 NY3d 844 [2006]; *Aurora Sportswear Group Ltd. v Eng,* 29 AD3d 445, 446 [2006]).

In this matter, in view of the testimony of Klimecki, during which he admitted that he never occupied the apartment but, instead, leased it solely for the purpose of re-leasing it, at a profit, to corporate entities to use as temporary housing for their employees, we can only agree with the DHCR's determination that Klimecki's tenancy falls squarely within the definition of an illusory tenancy. Moreover, 92 LP's argument that the

tenancy was not illusory but, rather, was exempt from the rent stabilization law because the subtenants were commercial entities is not only meritless, but consists of nothing more than a shallow, transparent attempt to legitimize a scheme designed to subvert the statutory protections of the rent stabilization law in order to realize a profit (*see generally Matter of 20 W. 76th St. v Division of Hous. & Community Renewal*, 306 AD2d 6 [2003]).

Finally, 92 LP takes issue with the DHCR's application of the four-year limitations period set forth in the RRRA in establishing a base rent date of May 8, 1983. 92 LP maintains that if the DHCR had processed the initial complaint promptly,[2] and adjudicated the matter within a reasonable time, it would have found that the rent for the apartment was properly calculated. In that regard, we observe that the Court of Appeals has unequivocally stated that "[t]he Legislature specifically directed that the RRRA of 1997 apply to *all* cases pending before the DHCR" (*Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144, 149 [2002]; *see also Levinson v 390 W. End Assoc., L.L.C.*, 22 AD3d 397, 401 [2005]), and that the purpose behind this legislative enactment was to alleviate the burden on honest landlords of having to retain rent records ad infinitum, and not to immunize dishonest ones from compliance with the law (*Thornton v Baron*, 5 NY3d 175, 181 [2005]; *Matter of Gilman*, 99 NY2d at 149). Moreover, rather than establishing a new statute of limitations, the RRRA merely "clarified and reinforced the four-year statute of limitations [already] applicable to rent overcharge claims (*see* Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26-516 [a])" (*Thornton*, 5 NY3d at 180).

In the matter at bar, despite the DHCR's inordinate delay, we decline to disturb its application of the RRRA in rendering its determination. We reach this conclusion not only in view of the Court of Appeals pronouncement that the RRRA applies to "all" cases pending before the agency, but also in light of the public policy considerations raised with regard to the Rent Stabilization Law and the clearly illegal tenancy which sought to circumvent them.

---

**2.** While we find the DHCR's approximately eight-year delay in reaching its initial determination, during which time it served the rent-overcharge application three times on two different owners, to be shocking, and its decision to not so much as address this delay in its submissions to this Court to be disturbing, we note that it has been acknowledged that the DHCR, during this time period, had a substantial backlog of cases, with over 26,000 cases pending in 1992, which number had purportedly been reduced to 2,000 pending overcharge proceedings by May 2002 (*see Matter of Gilman v New York State Div. of Hous. & Community Renewal*, 99 NY2d 144, 152 n 1 [2002, Graffeo, J., dissenting]).

We further note that the Deputy Commissioner, in his decision and order of April 1, 1999, which determined the first PAR, applied the four-year limitations period embodied in the RRRA, but then went on to hold that: "In any event, it was not proper for the Rent Administrator to allow guideline and vacancy rent increases during the period of time the subject apartment was rented to Mr. Klimecki as a non primary resident. The prior owner allowed Mr. Klimecki to rent four apartments in the subject premises (at least three of which were rented pursuant to non primary residence leases) during the same period of time and it is obvious that the purpose of such rentings was to secure higher rentals from unregulated tenants. An owner should not benefit from this type of renting by receiving rent stabilized guideline and vacancy allowances to cover the period when the apartment is being utilized as a non primary residence . . . The situation here of a non primary resident tenant is analogous to an apartment being vacant for a period of time so there is no reason to permit guideline rent increases when the subject apartment is not being utilized by a rent stabilized tenant."

In sum, the Deputy Commissioner declined to look back to the last rent-stabilized tenant's rent in order to determine that there was no overcharge because of the status of Klimecki's tenancy and, in that regard, we find that the DHCR's determination was neither arbitrary nor capricious, nor without a rational basis.

To the extent that the dissent finds our result is unjustly imposed at the expense of an owner that purchased the building five years after the rent overcharge complaint was filed, we note that it was simply a matter of due diligence for 92 LP to have determined, when it purchased the building, that not only was there a rent overcharge proceeding pending before the DHCR, but that one tenant, in a rent stabilized building, was warehousing apartments in order to circumvent the Rent Stabilization Law and Code and realize an illegal profit for both himself and the prior owner.

We have considered 92 LP's remaining arguments and find them to be without merit. Concur—Tom, J.P., Nardelli and Gonzalez, JJ.

Marlow and Kavanagh, JJ., dissent in a memorandum by Kavanagh, J., as follows: Because the Division of Housing and Community Renewal (DHCR) has not offered any reasonable explanation to account for why it took almost 17 years to finally decide a tenant's rent overcharge complaint, and because the impact from that delay has undeniably produced a result that is

so manifestly unfair to the building's owner, I must respectfully dissent.[1]

The relevant facts have been fairly stated by the majority and are not the subject of any meaningful dispute. They lead to one inescapable conclusion: had DHCR promptly processed this matter and rendered a decision within a reasonable period of time after the complaint of overcharge was first filed, it would have undoubtedly confirmed its earlier finding that the rent charged the tenant under this lease was lawful. Because of the unconscionable amount of time it took the agency to process this complaint, the agency felt compelled to apply a statute to this proceeding which was enacted a full decade after the proceeding was commenced, and as a result it reversed its earlier determination and ruled that the rent charged the tenant did not comply with the Rent Stabilization Law. All that had changed between DHCR's initial finding in favor of the owner and its decision four years later in favor of the tenant, was the enactment of the Rent Regulation Reform Act (RRRA) of 1997 and the application of that statute's four-year look-back limitation to this proceeding. All of the evidence upon which this decision was based remained the same.

There can be no doubt but that DHCR's neglect of its administrative responsibilities is the reason why it took so long to decide this matter.[2] Its conduct throughout these proceedings from the moment it first received the complaint until it rendered its final decision has been characterized by prolonged and unexplained delays for which it bears full responsibility. In fact, during the 17-year period that this matter has been pending, both the owner and the tenant have been forced on separate oc-

---

1. The overcharge complaint was filed by the tenant on May 8, 1987. DHCR issued a decision in favor of the owner eight years later on October 5, 1995. The tenant promptly filed a petition for administrative review (PAR) which was not decided by the agency until four years later on April 1, 1999. Appeals were taken from that determination and DHCR's request that the matter be referred back to it for further proceedings on "all pending issues" was granted. On February 25, 2004, or almost 17 years after the complaint was first filed, the Deputy Commissioner finally issued the decision that is the subject of this appeal.

2. At oral argument for the first time, counsel for DHCR, in a response to a question of the court, stated that there had been some 30,000 cases pending before the agency during this period suggesting that this was the reason for the prolonged delay in processing this matter. At no time in any of the submissions to this Court or in the motion court has the agency ever made that argument or in any way attempted to justify its delay on the grounds that its pending caseload prevented it from more promptly processing the matter. The failure to make that argument precludes the agency from making it now (*Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Community Renewal*, 187 AD2d 320 [1992]).

casions to initiate CPLR article 78 proceedings against the agency in an effort to compel it to do what it is otherwise legally obligated to do. In addition, for no apparent reason, the agency served this complaint on the owner no less than three separate times (May 1987, September 1990 and April 1994) and on each occasion, required the owner to file an answer even though the claim contained in the complaint was the same and answers to it were already on file with the agency. Nearly two years after the tenant appealed the Rental Administrator's initial determination in favor of the owner, DHCR acknowledged by a letter dated August 7, 1991 that it still had not assigned the matter within the agency for appropriate review or determination.[3] Finally, more than two years after DHCR asked the court below to return the matter to it for further proceedings on "all pending issues," the Commissioner on February 25, 2004 issued a final decision in favor of the tenant. Seventeen years to process such a matter is an unconscionable amount of time to do what by law the agency is legally obligated to do, and where that delay has resulted in such a profound prejudice to one of the parties, it should not be sanctioned by this Court in the form of an award to the tenant.

I am well aware that an administrative determination must be upheld if in fact it has a rational basis for the determination (*Matter of Arrocha v Board of Educ. of City of N.Y.*, 93 NY2d 361, 363 [1999]; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 230-231 [1974]), and that a "court may not substitute its judgment for that of the [administrative agency] *unless* the decision . . . is arbitrary and unreasonable and constitutes an abuse of discretion" (*id.* at 232 [internal quotation marks and citation omitted]). Moreover, an agency's reasonable interpretation of the statutes and regulations it administers is entitled to substantial deference (*Matter of Salvati v Eimicke*, 72 NY2d 784, 791 [1988]).

It is also recognized that " '[a]dministrative delay will not defeat the agency, absent a showing that the delay was willful or a result of negligence' " (*Matter of Evans v New York State Div. of Hous. & Community Renewal*, 284 AD2d 193 [2001], quoting *Matter of Estate of Goldman v New York State Div. of*

---

**3.** While the owner asked for numerous adjournments after the tenant filed for PAR, those adjournments were necessary to reconstruct the rental history of the premises during the time that the petitioner was not in possession. In addition, all of these adjournments predated DHCR's actual assignment of this matter within the agency for internal review and appeared to have played no part in any of the delays incurred in properly processing this matter.

*Hous. & Community Renewal*, 270 AD2d 169, 169 [2000]). If there is a change in the applicable law while a matter is pending before an agency, that law will be applied unless the delay encountered in processing the matter was unreasonable and the result of administrative neglect (*id.* at 169). However, where the agency is responsible for the delay and it appears that there is no justification for it, preexisting law may be applied (*Matter of Amsterdam-Manhattan Assoc. v Joy*, 42 NY2d 941, 942 [1977]). This is especially so where a party which has in all respects acted appropriately throughout the proceeding would be severely prejudiced by the change in the law. Here, no one has seriously argued that DHCR did not take too long to decide this matter or that petitioner has not been profoundly prejudiced by the application of the change in the law. It is also beyond question that if this ruling is allowed to stand, it will result in a substantial windfall for the tenant.[4] An experienced real estate professional, she agreed to the rent set by the lease presumably because she believed it was a fair figure to pay for this apartment.[5] Now she seeks an order which would set the rent for this apartment at a figure less than half of what she agreed to pay in the lease, and significantly less than what was paid in 1981 by the last stabilized tenant to occupy the apartment.[6]

All of this is to be imposed at the expense of an owner that purchased this building five years after the rent overcharge complaint was filed—and who did not profit nor was in any way involved in the activities of the prior tenant who last occupied the apartment. Petitioner's good faith belief that the rent it charged the tenant was lawful has never been seriously challenged in this proceeding—in fact, DHCR by not requiring the petitioner to pay treble damages has concluded that any violation of the Rent Stabilization Law by petitioner was neither wilful nor deliberate.[7]

This finding, simply stated, ought to be reversed. Had the

---

**4.** In addition to this award, it must be noted that tenant, as a result of a dispute with petitioner, stopped paying rent in March 1993, and as of July 31, 1996 owed $41,600.00 in back rent.

**5.** The tenant, when she signed the lease, was a property manager employed by the firm that managed this building for the former owner. She also has lectured at NYU on "Techniques And Operation of Property Management."

**6.** On April 1, 1979, the stabilized rent for this premises was $520.87. Two years later it was increased to $583.30.

**7.** In *Matter of Perlbinder v New York City Conciliation & Appeals Bd.* (67 NY2d 697 [1986]), DHCR deemed the subtenant the prime tenant based on an illusory tenancy and calculated the proper stabilized rent by applying Rent Guidelines Board guideline orders to increase the rent paid by the previous

agency promptly addressed this matter and processed the rent overcharge complaint within a reasonable period of time, it would have applied the law that existed prior to the enactment of the RRRA of 1997—and confirmed its initial finding that the rent charged this tenant was lawful. Its ultimate determination that a rent overcharge existed is based entirely upon its decision to apply a statute to this proceeding that was enacted long after the proceeding was commenced. And the only reason this provision is at all relevant to this proceeding is because it took DHCR so long to process this matter and decide this complaint. Therefore, Supreme Court should have granted the petition, vacated DHCR's determination and remanded the matter back to the agency with a direction that the complaint of overcharge be determined in accordance with the law that existed prior to the enactment of the RRRA of 1997.

---

stabilized tenant. It was this method that was utilized to calculate the tenant's rent in this proceeding.