Matter of 333 E. 49th Partnership, LP v New York State Div. of Hous. & Community Renewal (2018 NY Slip Op 05735)





Matter of 333 E. 49th Partnership, LP v New York State Div. of Hous. & Community Renewal


2018 NY Slip Op 05735


Decided on August 9, 2018


Appellate Division, First Department


Singh, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 9, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, P.J.
Peter Tom
Angela M. Mazzarelli
Cynthia S. Kern
Anil C. Singh, JJ.


101608/15 6608 

[*1]In re 333 East 49th Partnership, LP, et al., Petitioners-Appellants,
v
New York State Division of Housing and Community Renewal, Respondent-Respondent.



Petitioners appeal from an order and judgment (one paper) of the Supreme Court, New York County (Margaret A. Chan, J.), entered July 19, 2017, denying the petition to reverse a determination of DHCR, concerning a rent overcharge complaint, and dismissing the proceeding brought pursuant to CPLR article 78.




Kucker & Bruh, LLP, New York (Nativ Winiarsky and Patrick K. Munson of counsel), for appellants.
Mark F. Palomino, New York (Martin B. Schneider of counsel), for respondent.



SINGH, J.


The primary issues on this appeal are whether DHCR had the authority to sua sponte vacate a nonfinal order under section 2529.9 of the Rent Stabilization Code (9 NYCRR) and whether DHCR's finding that petitioner 333 East 49th Partnership, LP (the owner) was responsible for refunding the overcharge collected by the prime tenant, on the grounds that the prime tenant created an illusory tenancy, is supported by a rational basis and not arbitrary and capricious.
The owner owns a residential building located at 333 East 49th Street, in Manhattan. The parties allege that the owner rented 23 apartments to Dennis Dziena Associates (Dziena [*2]Associates)[FN1]. The apartment at issue, apartment 5T, is subject to regulation under the Rent Stabilization Law (Administrative Code of City of NY) (RSL).
By rent-stabilized lease, dated July 17, 1995, the owner leased the apartment to Dziena Associates, for a two-year term, for $1,242.57/month. The lease prohibited Dziena Associates from assigning the lease or subletting without the owner's prior written consent. The owner entered into rent-stabilized renewal leases with Dziena Associates, every two years, from 1999 through 2007. The 2003 renewal lease set a stabilized rent of $1,524.32.
By lease, dated December 2, 2003, Dennis Dziena Associates LLC (Dziena LLC) as landlord leased the apartment, fully furnished, to Joseph Lombardo, as tenant, for a two-month term at $2,800/month. Lombardo paid his rent directly to Dziena LLC. A printout from the New York State Department of State, Division of Corporations confirmed that Dziena LLC was created on June 27, 1997.
On or about December 31, 2008, DHCR mailed Lombardo a form letter, addressed to "Tenant," enclosing the annual registration form for the apartment, which indicated that Dziena Associates was the tenant of record, and that the legal regulated rent was $1,741.10. DHCR advised that, as Dziena Associates was listed as the tenant of record for many apartments in the building, it was attempting to determine the actual tenants and rents paid by them. DHCR asked Lombardo to provide it with this and other information.
On February 24, 2009, Lombardo filed a rent overcharge complaint against Madeleine Dziena (Madeleine) c/o Dziena LLC, who was identified as the prime tenant. Lombardo alleged that Madeleine was "an illusory prime tenant" and had overcharged him.
The Rent Administrator (RA) granted the complaint on December 4, 2009, finding that the prime tenant, Dziena LLC and/or Madeleine, had overcharged Lombardo, directing the tenant to refund the overcharge, and assessing treble damages, for total damages of $201,593.29. The RA found that the base date was February 27, 2005, and set a base date rent of $1,524.32. The claim of illusory tenancy was rejected based upon the owner's unrefuted contention that it had not received any amount in excess of the legal regulated rent. The RA noted that Dziena LLC's counsel had advised that Madeleine had a controlling interest in the LLC, and thus, he found that she and the LLC were jointly and severally liable.
On January 12, 2010, the RA informed Lombardo and Dziena LLC that, on the prime tenant's application, which sought Madeleine's removal as a party jointly responsible for the overcharge, he was reconsidering and reopening the December 2009 order.
Thereafter, on September 24, 2010, the RA modified his initial order, finding that Madeleine was not responsible for the overcharge, noting that the rent had been paid to the LLC. The RA again rejected Lombardo's claim of an illusory tenancy, "in the absence of any proof the owner or the manager received any amount of the excess rent collected by the prime tenant" and found Dziena LLC to be solely responsible.
On October 22, 2010, Lombardo filed a petition for administrative review (PAR), alleging that the owner and managing agent should be jointly and severally liable, with the prime tenant, because they were complicit and involved in numerous illegal sublets by the prime tenant, and that Madeleine should also be liable.
The Deputy Commissioner partially granted the PAR by order dated April 19, 2012, to the extent of holding that "the finding below absolving Madeleine Dziena of responsibility for the overcharge is not supported by cognizable evidence in the record" and remanding the matter "for further fact finding, including referral . . . for an oral hearing if the [RA] deems doing so appropriate." The Commissioner further found that "neither the prime tenant nor the subtenant [*3]have shown that the owner . . . profited from the arrangement created by the prime tenant. It is clear that responsibility . . . lies with . . . the prime tenant alone".
Sixteen months later on August 8, 2013, DHCR sua sponte reconsidered the April 2012 PAR stating in relevant part:
"On the Commissioner's own initiative, the Commissioner has determined to reopen the Commissioner's order . . . issued on April 19, 2012 ... Upon further review of said order . . ., the Commissioner finds the same must be revoked as its provisions are so internally inconsistent as to constitute an irregularity in vital matters."
The order reopened the matter to "replac[e] the order . . . of April 12, 2012 with an order . . . which will read the same except that the fifth paragraph on the second page ... will be deleted in full from the new order and opinion." The paragraph to be replaced contained the finding that the owner had not profited from the arrangement and sole responsibility herein rested with the prime tenant. On August 20, 2013, DHCR remanded the matter to the RA for further proceedings.
On June 18, 2014, the RA issued his fourth order and, for the first time, found that the owner was jointly and severally responsible, with the prime tenant, for the overcharge in the amount of $263,942.29, including treble damages and interest. The RA found the tenancy was illusory as the arrangement deprived the tenants of their rights under the RSL. The RA further found that, as the arrangement was void as against public policy, the rental history could not be considered, and thus, set the rent using the default method set forth in Thornton v Baron (5 NY3d 175, 180 [2005]). Additionally, the RA found that treble damages were appropriate as willfulness was supported by the scope of the rental arrangements between the owner and prime tenant.
The owner filed a PAR contesting the RA's June 2014 order, asserting that it rented the apartment to Dziena Associates, a partnership, and not Dziena LLC, that any wrongdoing was committed by the prime tenant or Madeleine, who formed the LLC as a ruse to shield herself from liability, and so dominated the LLC as to be its alter ego. The owner asserted that renting multiple apartments to one entity was not illegal and there was no evidence that it colluded in the scheme, was aware of the overcharge, or profited from it. The owner further asserted that its lease was valid that, therefore, the default formula should not have been used to set the base date rent and that treble damages were inappropriate as the owner did not collect excess rent.
DHCR denied the owner's PAR and the separate PAR filed by the prime tenant on July 1, 2015 finding that the record did not establish any distinction between Dziena Associates and Dziena LLC. DHCR also found the owner's argument that it had no relationship with the LLC to be unavailing and found insufficient evidence to show that Madeline dominated the LLC so as to become its alter ego. DHCR held that the RA's finding that the owner was jointly and severally responsible for the overcharge was proper, relying on Matter of Avon Furniture Leasing v Popolizio (116 AD2d 280 [1st Dept 1986], lv denied 68 NY2d 610 [1986]). In reaching this conclusion, DHCR noted that the prime tenant rented several apartments it did not intend to occupy and the owner had constructive knowledge of the illegal subleases. DHCR found that the RA correctly invalidated the owner's lease with the prime tenant and set the base date rent using the Thornton formula, as the illusory tenancy invalidated the rent charged to the prime tenant, rendering the base date rent unreliable. DHCR found the owner to be subject to treble damages as it failed to rebut the presumption of willfulness using the same reasoning.
The owner then commenced this article 78 proceeding alleging, inter alia, that DHCR's July 1, 2015 determination was arbitrary and capricious. Supreme Court denied the petition seeking an order reversing the determination of DHCR and dismissed the proceeding. We now [*4]modify.
Discussion
The owner now argues, for the first time on appeal, that the Commissioner's August 8, 2013 order sua sponte reopening the matter was improper. On an article 78 proceeding, the reviewing court is limited to consideration of evidence and arguments raised before the agency when the administrative determination was rendered (see Matter of Weill v New York City Dept of Educ., 61 AD3d 407, 408 [1st Dept 2009]; Matter of HLV Assoc. v Aponte, 223 AD2d 362, 363 [1st Dept 1996]). Accordingly, "[t]his Court has repeatedly rejected parties' attempts to raise issues on appeal [for the first time] where they neglected to raise those issues at an administrative hearing" (Matter of Torres v New York City Hous. Auth., 40 AD3d 328, 330 [1st Dept 2007], citing District Council 37, Am. Fedn. of State, County & Mun. Empls. v City of New York, 22 AD3d 279 [1st Dept 2005]). Accordingly, the owner's argument that the Commissioner may not sua sponte reopen is raised for the first time on appeal and need not be considered.
However, if we were to consider owner's argument, we would find that the Commissioner's sua sponte reopening of the matter was proper. Section 2529.9 of the Rent Stabilization Code provides:
"The Commissioner, on application of either party or on his own initiative, and upon notice to all parties [], may, prior to the date that a proceeding for judicial review has been commenced . . . issue a superseding order modifying or revoking any order issued by him ... where he finds that such order was the result of illegality, irregularity in vital matters or fraud."
The foregoing provision authorizes DHCR to reopen, sua sponte, a proceeding at any time upon a finding of irregularity of vital matters, fraud or illegality, upon notice to the parties (see Matter of Sherwood 34 Assoc. v New York State Div. of Hous. & Community Renewal, 309 AD2d 529, 532 [1st Dept 2003]; Matter of Dowling v New York State Div. of Hous. & Community Renewal, 249 AD2d 181, 183 [1st Dept 1998] [on finding of conflict of interest], lv denied 93 NY2d 802 [1999]).
This is an exception to the "general rule of administrative finality" (Gersten v 56 7th Ave. LLC, 88 AD3d 189, 203 [1st Dept 2011]), pursuant to which, " [o]nce an administrative agency has decided a matter, based upon a proper factual showing and the application of its own regulations and precedent, the parties ... are entitled to have the determination treated as final'" (id. at 204, quoting Matter of Peckham v Calogero, 54 AD3d 27, 28 [1st Dept 2008], affd 12 NY3d 424 [2009]). Thus, "a final administrative determination cannot be reopened to give a party an opportunity to make a new argument based on the existing administrative record" (Gersten, 88 AD3d at 204).
Therefore, "to challenge an administrative determination, the agency action must be final and binding upon the petitioner" (Matter of East Ramapo Cent. Sch. Dist. v King, 29 NY3d 938, 939 [2017] [internal citations and quotation marks omitted]; see also CPLR 7801[1]). "A final and binding' determination is one where the agency reached a definitive position on the issue that inflicts actual, concrete injury,' and the injury may not be significantly ameliorated by further administrative action or by steps available to the complaining party'" (Matter of Center for Discovery, Inc. v New York City Dept. of Educ., -AD3d-, 2018 NY Slip Op 03494, *2 [1st Dept 2018] quoting Walton v New York State Dept. of Correctional Servs., 8 NY3d 186, 194 [2007]).
Here, it is clear that DHCR's sua sponte determination, dated August 8, 2013, was not final. This determination did not impose any obligations or create any legal relationships as the determination simply remanded the matter to the RA for a determination of the owner's liability. Moreover, the owner had a remedy - which it exercised - filing a PAR challenging the RA's [*5]subsequent determination of liability. In fact, it was not until this last order was decided that the owner instituted the article 78 proceeding.
Furthermore, an administrative agency's interpretation of the regulations which it administers is entitled to great deference, if not irrational or unreasonable (see Samiento v World Yacht Inc., 10 NY3d 70, 79 [2008]; Matter of Salvati v Eimicke, 72 NY2d 784, 791 [1988]). DHCR defines "[i]rregularity in a vital matter" as the "[f]ailure by the agency to accurately calculate the rent or penalty, or to comply with established rules of practice and procedure" (DHCR Office of Rent Administration, Policy Statement 91-5). Based on the record before this Court, DHCR did not act irrationally or unreasonably in making its sua sponte determination that the order was internally inconsistent so as to constitute an irregularity in vital matters.
We now turn to whether the owner may be held responsible for creating an illusory tenancy by leasing multiple apartments to a business entity when only the business entity financially profited.
The rent stabilization laws are designed "to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices (Avon Furniture Leasing v Popolizio, 116 AD2d at 283 [internal quotation marks omitted]). The Rent Stabilization Code expressly provides that the legal regulated rents and other requirements "shall not be evaded, either directly or indirectly, in connection with the renting or leasing or the transfer of a lease for housing accommodations" (9 NYCRR 2525.2[a]).
An illusory tenancy exists when the prime tenant rents an apartment for the sole purpose of re-leasing it, at a profit, or otherwise subverts the protections of the RSL (see Matter of Partnership 92 LP & Bldg. Mgt. Co., Inc. v State of N.Y. Div. of Hous. & Community Renewal, 46 AD3d 425, 429-430 [1st Dept 2007], affd 11 NY2d 859 [2008]). "In such case, the subtenant will be accorded the full protection of the rent stabilization laws" (Avon, 116 AD2d at 284).
Where an illusory tenancy is created by the prime tenant's profiteering, "while there should be a showing of at least constructive knowledge on the part of the landlord of the subleasing arrangement, there is clearly no requirement that there be evidence of collusion ... before an illusory tenancy will be found" (Primrose Mgt. Co. v Donahoe, 253 AD2d 404, 405 [1st Dept 1998] [emphasis added]; see also Avon, 116 AD2d at 285 ["While one who acts collusively with . . . the owner . . . in entering into a sublease as a means of permitting the landlord to subvert the rent laws, is clearly an illusory tenant,' a finding of such collusion is not an essential prerequisite to a determination that the tenancy is illusory"]). We have recognized that "while the landlord apparently did not benefit, it did know or should have known of the subterfuge, which was clearly within the knowledge of the former superintendent" (Primrose, 253 AD2d at 405-406).
DHCR's finding that the owner may be held accountable for the overcharge is not irrational or arbitrary and capricious. DHCR is not restricted, as the owner argues, to only take into account whether the owner overcharged the subtenant and actually collected rent in excess of the lawful stabilized rent. Rather, DHCR may consider that the owner "derived substantial benefits from the scheme and was aware of the nature of [the prime tenant's] activities" (Avon, 116 AS2d at 285). In making its finding, DHCR properly relied upon the fact that the prime tenant rented 22 or 23 apartments in the building as evidence of the owner's constructive knowledge of an illegal profiteering scheme. The owner's reliance upon Manocherian v Lenox Hill Hosp. (229 AD2d 197 [1st Dept 1997], lv denied 90 NY2d 835 [1997]) is misplaced. In Manocherian we held that a hospital's rental of 15 rent-stabilized apartments in a building for sublet as housing to its nurses or employees, did "not constitute an illusory prime tenancy,' such as where an alter ego of the owner rents an apartment as the tenant' and then sublets' to an innocent third party in an effort to stockpile vacancies or subscriptions for a conversion to cooperative or condominium ownership" (id. at 205). The apartments rented to the hospital in [*6]Manocherian were pursuant to the RSL, which provides "not-for-profit hospital[s]
. . . the right to sublet any housing accommodation leased by it to its affiliated personnel without requiring the landlord's consent" (RSL 26-511[c][12][h]; see also Rent Stabilization Code § 2520.11[f]). Here, the owner does not dispute that the prime tenant was not subject to these exemptions within the RSL and Rent Stabilization Code. Therefore, the holding in Manocherian is inapposite.
The other cases relied upon by the owner on this issue involve similar scenarios, where the prime tenant was a charitable or other nonprofit organization leasing multiple apartments to house employees, clients, patients, or other affiliates (see e.g. Avon Bard Co. v Aquarian Found., 260 AD2d 207 [1st Dept 1999], appeal dismissed 93 NY2d 998 [1999] [religious corporation]; Matter of Schwartz Landes Assoc. v New York City Conciliation & Appeals Bd., 117 AD2d 74 [1st Dept 1986] [nonprofit corporation aiding rehabilitating formerly institutionalized patients]). The issue in those cases involve the owner's right to refuse to renew prime leases, the analysis of which is irrelevant to the question of illusory tenancy.
Here, the prime tenant entered into the lease in order to earn a profit, in violation of the RSL. Further, the owner leased another 22 or 23 apartments to the same tenant, which was clearly not going to occupy them. DHCR considered this fact and the building staff's knowledge of the sublets, ascertained through the doorperson and superintendent in connection with deliveries and repairs, as well as evidence that the owner sought to profit by seeking luxury decontrol of several apartments leased to the prime tenant on default. Accordingly, DHCR did not act arbitrarily or capriciously in finding that the owner was "seeking to evade the Rent Stabilization Law and acquiesced in [the prime tenant's] activities towards that end" (Avon, 116 AD2d at 286).
The owner argues that DHCR improperly relied upon "agency records" to reach its luxury deregulation finding, a claim that was only first asserted in the PAR determination. However, "[t]he record adduced before the agency necessarily, and rationally, includes the orders and records in the agency's own files" (Matter of Schaefer v New York State Div. of Hous. & Community Renewal, 19 Misc 3d 1132[A], *6, 2008 NY Slip Op 50973{U], *6-7 [Sup Ct, NY County 2008] [internal quotation marks omitted]; see also VR Equities v New York City Conciliation and Appeals Bd., 118 AD2d 459 [1st Dept 1986]). Furthermore, the administrative record does include evidence of attempted profiteering from luxury decontrol, in the form of a December 9, 2009 letter from the owner's counsel offering Lombardo a non rent-stabilized lease on the basis of luxury decontrol. Therefore, DHCR's findings regarding the owner's luxury deregulation attempts are proper.
We agree with Supreme Court that DHCR did not act arbitrarily, capriciously or in violation of the law in holding the owner liable for treble damages.
RSL 26-511(c)(12)(e), which entitles a subtenant to treble damages in the event of an overcharge, provides that, "where a tenant violates the provisions of subparagraph (a)" with regard to overcharging a subtenant, "the subtenant shall be entitled to damages of three times the overcharge" (RSL 26-511[c][12][e]). Additionally, RSC 2525.6(b) provides that, where a tenant charges a subtenant more than a 10% surcharge for housing accommodations that are sublet fully furnished, "the subtenant shall be entitled to treble damages." Contrary to the owner's contention, these provisions do not expressly limit the landlord's responsibility for an overcharge to the amount it collected.
The Appellate Term in Schreibman v Wiske (NYLJ, July 24, 1990 at 17, col 2 [App Term, 1st Dept 1990]), held that a subtenant's exclusive remedy for an overcharge is in an action against the tenant. However, under the foregoing provisions, DHCR, which was not a party to the case, is not bound by the decision, which did not involve judicial review of an agency determination (see Matter of Bambeck v State Div. of Hous. & Community Renewal, Off. of Rent [*7]Admin., 129 AD2d 51, 57 [1st Dept 1987], lv denied 70 NY2d 615 [1988]). Moreover, Schreibman's holding is incorrect, as a subtenant is not limited to obtaining relief against the tenant (Thornton, 5 NY3d at 181; Partnership 92, 46 AD3d at 430).
As noted by the owner, in contrast to the above provision relating to subtenants, RSL 26-516(a) provides that,
"any owner . . . who, upon complaint of a tenant, or of the [DHCR] is found ... to have collected an overcharge above the rent authorized for a housing accommodation subject to this chapter shall be liable to the tenant for a penalty equal to three times the amount of such overcharge. . . . If the owner establishes by a preponderance of the evidence that the overcharge was not willful [DHCR] shall establish the penalty as the amount of the overcharge plus interest."
Unlike in Matter of Badem Bldgs. v Abrams (70 NY2d 45, 56 [1987]), relied upon by the owner, here there is more than a "mere presence of a number of illusory tenancies," and the issue involves article 78 review and not civil liability under the Martin Act (General Business Law art 23-A). Collusion need not be found for a landlord to be held responsible for an illusory tenancy. Furthermore, DHCR's finding of constructive knowledge of the prime tenant's scheme was supported by the building staff's knowledge of the sublets and the staff keeping a separate registry for prime tenant's sublets for deliveries and repairs and the owner's attempts to profit from these sublets by seeking luxury decontrol of several apartments leased to the prime tenant on default (see Primrose, 253 AD2d at 405; Avon, 116 AD2d at 285). Accordingly, the owner has failed to meet its burden of establishing by a preponderance of the evidence that the overcharge is not willful (see Matter of Century Tower Assoc. v State of N.Y. Div. of Hous. & Community Renewal, 83 NY2d 819, 823 [1994]; Matter of Bronx Boynton Ave. LLC v New York State Div. of Hous. & Community Renewal, 158 AD3d 589, 590 [1st Dept 2018]).
Additionally, Rent Stabilization Code 2526.1(a)(1) imposes treble damages upon owners who "have collected any rent . . . in excess of the legal regulated rent" (9 NYCRR 2526.1[a][1]). However, as noted above, RSL 26-511(c)(12)(e) merely states that "where a tenant violates the provisions of subparagraph (a)" with regard to overcharging a subtenant, "the subtenant shall be entitled to damages of three times the overcharge" (RSL 26-511[c][12][e]; see also 9 NYCRR 2525.6[b]). DHCR's interpretation of these statutes to impose treble damages upon the owner, under these circumstances, is rational and thus, entitled to deference (see Salvati, 72 NY2d at 791).
However, we find that DHCR erred to the extent that it used Thornton's default method to set the stabilized rent. Rent overcharge complaints are subject to a four-year statute of limitations (RSL 26-516[a][2]; CPLR 213-a]). The New York Rent Regulation Reform Act (RRRA) of 1997 (L 1997, ch 116, § 33) amended RSL 26-516 to preclude examination of the rent history of the housing accommodation before the four-year period preceding the filing of a rent overcharge complaint (see Thornton, 5 NY3d at 180; Silver v Lynch, 283 AD2d 213, 214 [1st Dept 2001]).
9 NYCRR 2526.1(a)(3)(i) provides that "[t]he legal regulated rent for purposes of determining an overcharge shall be deemed to be the rent charged on the base date, plus . . . any subsequent lawful increases and adjustments" (see also 9 NYCRR 2520.6). The "base date" is "the date four years prior to the date of the filing of such ... complaint" (9 NYCRR 2520.6[f][1]). "[W]here there exist[s] substantial indicia of fraud on the record," DHCR may consider the rental history prior to the four-year look-back period (Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358, 366 [2010]; see also Matter of Boyd v New York State Div. of Hous. & Community Renewal, 23 NY3d 999 [2014]).
In Thornton, the Court of Appeals held that where a lease provision purporting to exempt [*8]an apartment from the RSL, in exchange for an agreement not to use the apartment as a primary residence, was void as against public policy, and the rent registration listing the illegal rent was a nullity, "the default formula used by DHCR to set the rent where no reliable rent records are available was the appropriate vehicle for fixing the base date rent" (Thornton, 5 NY3d at 181). The Court of Appeals reached this conclusion "so that no wrongdoer may benefit at the expense of the public" (id. at 182 [internal quotation marks omitted]). The default formula "uses the lowest rent charged for a rent-stabilized apartment with the same number of rooms in the same building on the relevant base date" (id. at 180, n 1).
In Grimm, the Court of Appeals found that the rationale used in Thornton was not limited to illusory tenancies, and thus, where the overcharge complaint makes a colorable allegation of a fraudulent deregulation scheme to remove an apartment from the protections of rent stabilization, DHCR must investigate the legality of the base date rent (15 NY3d at 366).
Here, unlike in Thornton, the rent-stabilized lease that the owner entered into with the prime tenant was a legal one and it is not alleged to have included any improper provisions. While the lease served as a vehicle for the prime tenant's fraud, the rent-stabilized rent set forth therein, in the subsequent renewals, and in the rent registration records, are reliable in their own right. Unlike in Thornton, here the fraud was carried out via a separate vehicle, through the sublease. On this record, the base date rent was properly set by the RA in his December 4, 2009 order at $1,524.32, the rent in effect on the base date, February 27, 2005, pursuant to the 2003 lease renewal.
Finally, Supreme Court erred in holding that Madeleine Dziena is not personally liable. The lease, entered into in 1995, and renewal leases entered into between the owner and prime tenant were all with an entity identified as Dziena Associates. Dziena LLC did not exist until June 1997, almost two years after executing its lease with the owner for the subject apartment. There is no evidence that the owner was on notice that the prime tenant was operating or doing business as an LLC. This status would have shielded the LLC's members from personal liability and likely changed the course of the parties' relationship. Therefore, it was improper for DHCR to ignore the distinction between the entity that entered into the original lease and had a relationship with the owner and the later created LLC that entered into a relationship with the subtenant, Joseph Lombardo.
Given that Dziena LLC did not exist at the time that the original lease was entered into and there was no evidence that it had any dealing with the owner in its purported capacity as an LLC, it could not have been the prime tenant. As such, it was improper to use Dziena LLC's status as an LLC to shield one of its members, Madeleine, from liability.
Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Margaret A. Chan, J.), entered July 19, 2017, denying the petition to reverse a determination of DHCR concerning a rent overcharge complaint and dismissing the proceeding brought pursuant to CPLR article 78, should be modified, on the law and on the facts, to find Madeline Dziena personally liable and to vacate DHCR's improper use of Thornton's default method to set the stabilized rent, set the base date rent at $1,524.32, and remand for a recalculation of damages, and otherwise affirmed, without costs.
All concur.
Order and judgment (one paper), Supreme Court, New York County (Margaret A. Chan, J.), entered July 19, 2017, modified, on the law and on the facts, to find Madeline Dziena personally liable and to vacate DHCR's improper use of Thornton's default method to set the stabilized rent, set the base date rent at $1,524.32, and remand for a recalculation of damages, and otherwise affirmed, without costs.
Opinion by Singh, J. All concur.
Acosta, P.J., Tom, Mazzarelli, Kern, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 9, 2018
CLERK



Footnotes

Footnote 1: The owner's rent roll from 2007 reflects only 22 such rentals.