## Matter of Min Wu v Institute of Elec. & Elecs. Engrs., Inc.

2025 NY Slip Op 30938(U)

March 24, 2025

Supreme Court, New York County

Docket Number: Index No. 159073/2024

Judge: Alexander M. Tisch

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**   **HON. ALEXANDER M. TISCH**        **PART  18**

_Justice_

------------------------------------------------------------------------X

In the Matter of the Application of
MIN WU, PH.D.,

                         Petitioner,

              - against -

THE INSITUTE OF ELECTRICAL AND
ELECTRONICS ENGINEERS, INC.

                      Respondent.

------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 159073/2024 |
| **MOTION DATE** | |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1-19, 26-58, 64 were read on this motion to/for       ARTICLE 78 (BODY OR OFFICER)     .

Petitioner Min Wu, PH.D. brings this proceeding pursuant to CPLR Article 78, asking the Court to annul determinations made by respondent, The Institute of Electrical and Electronics Engineers, Inc. ("Institute") on May 1, 2024, and July 3, 2024, removing Wu from her position as President of the Signal Processing Society ("SPS"), a technical society unit within the Institute, and declaring that such actions were arbitrary and capricious, beyond the scope of powers granted the Institute under its bylaws[1], and in violation of New York Not-For-Profit Corporation Law.  Wu further seeks restoration to her position as President of SPS for her full two-year term on her date of reinstatement and injunctive relief enjoining the Institute from enforcing any leadership role suspension or any other disciplinary sanction issued against Wu,

---

[1] Section 1-110 of the bylaws established a process for filing and adjudicating misconduct complaints (NYSCEF Doc. No. 2) and Policy 7.10 provides for procedures and requirements relating to the filings of complaints, investigations, hearing board procedures, and required reports (NYSCEF Doc. No. 3).

[* 1]

including vactur of petitioner's three-year suspension from future leadership roles with the Institute.

Pursuant to CPLR § 7803(3), "'in a proceeding in the nature of mandamus to review…[t]he standard of review [] is whether the agency determination was arbitrary and capricious or affected by an error of law'" (*Anonymous v Comm'r of Health*, 21 AD3d 841, 843 [1st Dept 2005] quoting *Scherbyn v Wayne-Finger Lakes Bd. of Co-op. Educ. Servs.*, 77 NY2d 753, 758 [1991]). "An agency's interpretation of the statutes and regulations that it administers is entitled to deference, and must be upheld if reasonable" (M*atter of Delillo v New York State Div. of Hous. and Community Renewal*, 45 AD3d 682, 683 [2d Dept 2007] *see also Gilman v New York State Div. of Housing and Community Renewal*, 99 NY2d 144, 149 [2002]). "It is a long-standing, well-established standard that the judicial review of an administrative determination is limited to whether such determination was arbitrary or capricious or without a rational basis in the administrative record" (*Partnership 92 LP v State Div. of Hous. & Cmty. Renewal*, 46 AD3d 425, 428 [1st Dept 2007]).

Wu contends she was suspended from her position effective May 1, 2024, without hearing or due process because of an opinion she expressed about an SPS officer candidate in a text message that was disseminated (NSYCEF Doc No. 12). However, after an investigation, a review panel of the Institute's conduct review committee ("CRC") found that Wu had violated the Institute's code of ethics and approved a disciplinary action that included her removal as President of the SPS and a leadership ban (NYSCEF Doc. No. 42).[2] Wu appealed that decision to the Institute's ethics and member conduct committee ("EMC"), which affirmed the CRC. The EMC's determination is normally final but the Institute used an exception pursuant to bylaw

_____

[2] I-305.6 of the bylaws set forth that the EMC, through the CRC, is the body responsible for ethics related discipline.

Section I-300-4.1 (NYSCEF Doc. No. 2), which gives the Institute's board of directors the discretion to directly address matters of immediate importance. Even with this extra layer of review, the board affirmed the underlying determinations of the CRC and EMC. In fact, at both the EMC and board of directors the duration of Wu's future leadership ban was reduced from the CRC's original determination. At all stages the evidence shows that Wu had the opportunity to respond to allegations against her, to submit evidence and be represented counsel, as she was during the EMC appeal. The determinations were not arbitrary and capricious.

Wu further contends that the Institute's bylaws require that before discipline may be imposed the Institute's President must appoint a hearing board and the Institute's board of directors must review the findings before sanctions are imposed (NYSCEF Doc. No. 2). However, the Institute established this process is only required when member sanctions like expulsion from the Institute are at issue, not the type of disciplinary actions at issue in the instant matter (NYSCEF Doc. No. 3). And, as indicated above, Wu did ultimately have her case reviewed by the board of directors.

Wu also argues that the mechanism for removal of Society officers pursuant to bylaw I-111 was not followed. However, the Institute established this removal process is separate and distinct from the ethics review process that was used to remove Wu. It is simply a process for members of the Society, and other similar units within the Institute to remove their leadership and take other disciplinary actions.[3] Similarly, Wu asserts violations of New York Not for Profit Corporation Law § 714(a). However, N-PCL § 714(a) is not applicable because it only applies to officers of the not-for-profit corporation itself, not an organizational unit of one, which is not a

---

[3] A separate proceeding occurred pursuant to I-111 of the bylaws within the Society that did not result in a sanction against Wu.

separate legal entity. Moreover, only the New York State Attorney General is authorized to take action to vindicate the rights of officers of a not-for-profit under N-PCL § 112(9).

The Court has considered Wu's other arguments, including allegations of irreparable harm, and finds them to be without merit.

Accordingly, for the reasons discussed above, Motion Sequence Number 001 is hereby DENIED, and the underlying petition is DISMISSED.[4]

This constitutes the Decision and Order of the Court.

| 3/24/2025 | | | | |
|---|---|---|---|---|
| **DATE** | | | **ALEXANDER M. TISCH, J.S.C.** | |
| CHECK ONE: | [X] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION | |
| | [ ] GRANTED [X] DENIED | | [ ] GRANTED IN PART | [ ] OTHER |
| APPLICATION: | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE |

---

[4] Because of the dismissal there is no basis for the Court to order discovery or award petitioner costs and attorney's fees.

159073/2024 Motion No. 001                                                                   Page 4 of 4